**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES FRATZ**, *ET AL.,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **CASE NO. 11-cv-02577 MSG** |
| | : | |
| **GOLDMAN & WARSHAW, P.C.** | : | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.    NATURE OF THE CASE

Plaintiffs, Charles Fratz, brings this case as a class action against Goldman & Warshaw,

P.C. (hereinafter referred to as "Goldman & Warshaw"). Plaintiff brings this action as the result

of Defendant wrongfully utilizing irrelevant and/or inapplicable documentation as evidence in

attempting to collect money from persons to whom credit cards had/have been issued, and who

have allegedly defaulted in the payment of the credit card debt. The documents utilized as

evidence in an attempt to collect the alleged debts are contracts (also referred to as credit card

agreements or "Cardmember Agreements") the published dates of which are significantly after

the dates of issuance of the subject credit cards, and. Therefore, the presented Cardmember

Agreements are **NOT** the governing agreements. The law is very clear: It is a violation of the

federal Fair Debt Collection Practices Act (the "FDCPA", cited as 15 U.S.C. § 1692a, *et seq.*) to

attempt to collect a debt or collect a debt not authorized by contract or law. The reason for the

systemic use of these knowingly wrong agreements is clear: With the belief and knowledge that

the "least-sophisticated" consumer will not question the evidence or basis for a collection

lawsuit, defendant and its client use the most "convenient-to-them" documentation regardless of

that documentation's efficacy and applicability.

1

Thus, the lack of availability of the original and applicable contract that defined the terms and conditions of the relationship between credit issuer and credit card holder may belie the claims made by the credit card issuer and any "debt collector" employed to collect the debt. Such items as interest charges, late fee charges, over the limit charges, charges for attorneys' fees, *inter alia,* along with the contractual ability to amend the original contract, are not verifiable and cannot attest to the charges sought to be imposed and collect.

This scheme is in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq.* ("FDCPA"), and the Pennsylvania correlatives, the Unfair Trade Practices and Consumer Protection Law, 73 § 201-1, *et seq.* ("UTPCPL"), and the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq.* Plaintiff, Charles Fratz ("Plaintiff"), individually and on behalf of all other consumers similarly situated, seeks damages and other relief against defendant for its deceptive and unfair debt collection practices.

Goldman & Warshaw is a collection law firm; that is, it represents collection agencies, creditors, and others as a "debt collector" in the business of seeking collections of purported debts, as counsel for the creditors or debt collectors. The law firm is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and 73 P.S. § 2270.3(3)(ii).

Goldman & Warshaw is a law firm with offices in three (3) states: New York, New Jersey and Pennsylvania, representing numerous creditors and "debt collectors" such as "debt buyers", collection agencies, and the like.

Although discovery has been limited to the underlying case involving Capital One and Plaintiff, Plaintiff's undersigned counsel has taken an independent search of docket entries to

2

determine the number of Capital One cases handled by Goldman & Warshaw[1],[2] in the immediate

area, not considering New Jersey, New York, or cases outside of Bucks and Montgomery

counties:

> Bucks County:        23 cases
>
> Montgomery County: 27 cases

*See* Exhibits "A" and "B" attached hereto and incorporated herein by reference.

The existence of this scheme became obvious when, within a very short period of time,

several purported debtors visited with the Plaintiffs' undersigned counsel to complain that they

were being sued for debts and that Plaintiffs in those cards – Capital One Bank, and others –

were using as evidence in those various cases Cardmember Agreements that were dated

substantially after the date of the issuance of the credit card.[3]

This law suit is an attempt to achieve a cessation of the use of these generic, inapplicable

Cardmember Agreements, and other relief as is available and appropriate under the statutes

governing the cited causes of action in the Complaint.

Plaintiff brings this action on his own behalf and on behalf of a class pursuant to Rule

23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs will demonstrate

below that this matter is ideally suited to class action treatment. It is a class minimally of 50

cases in two counties in Pennsylvania, but is believed to total in the hundreds in New York, New

---

[1]The search was conducted by using the APOC Number of the Pennsylvania attorney for
Goldman & Warshaw, Barry Rosen, Esquire (#42951), for the counties of Bucks and
Montgomery, seeking cases filed by Mr. Rosen (Goldman& Warshaw) on behalf of Capital One.
[2]Below, Plaintiff will establish that Capital One has instructed Goldman & Warshaw to utilize
generic contracts, contracts that do not correlate to the contracts accompanying the issuance of
credit cards. This latter fact will establish commonality and typicality.
[3]The first case, *Henner and Nuel, et al. v. Capital One Bank, et al.,* 2010-cv-05765 MSG, in the
United States District Court for the Eastern District of Pennsylvania. This case was settled on an
individual basis.

3

Jersey and Pennsylvania. The case involves defendant's practice of knowingly using false documents as evidence in law suits in which the defendant is seeking to collect a debt for its clients debt issuers, debt buyer and debt collectors. The practice that is the basis of this class action has been perpetuated by defendant in a uniform manner and is systemic throughout the three states in which Goldman & Warshaw practices collection law.

For the reasons set forth below, plaintiff's Motion for Class Certification should be granted.

## II.     NATURES OF PLAINTIFFS' CLAIMS UNDER THE ACT

### A.     Purpose and Background of 15 U.S.C. § 1692a, *et seq.*, The FDCPA

In the preliminary examination for the enactment of the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a) (Congressional findings and declaration of purpose). Congress determined that "means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debt." 15 U.S.C. § 1692(c). *Wilson v. Quadramed Corp.,* 225 F. 3d 350, 354 (3d. Cir. 2000). *See also Piper v. Portnoff Law Associates, Ltd.,* 396 F.3d 227, 232 (3d. Cir. 2005) (acknowledging that the FDCPA makes available remedies to consumers who have been subjected to unfair and/or deceptive collection practices). Among the practices prohibited by the FDCPA are (1) the use of "any false, deceptive or misleading representations or means in connection with the collection of any debt", and, (2) the attempt to collect or the collection of consumer debt that is not permitted by law or contract. 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

The legislature intended that the FDCPA to be enforced by private class actions, *inter alia. Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d. Cir.2004), referencing Senate Report

4

No. 95-382, at page 5, which stated: "The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance". *See also Brown v. Card Services,* 464 F.3d 450, 453 (3d. Cir. 2006).

The FDCPA is a strict liability statute meaning that the degree of culpability of the violator is not an issue except when computing damages.  A single violation of the FDCPA is sufficient to confirm liability therefor. *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d. Cir. 1993).

It is universally held that the FDCPA is to be construed liberally in favor of the consumer; the consumer is a person to which Congress has referred as "the least sophisticated consumer". *See Brown, supra,* at 453.

Pennsylvania's corollary acts are is 73 P.S. § 2270.4(a)(b), and 73 P.S. 201-1, *et seq.,* which incorporates by reference that the violation of the FDCPA is, in turn, a violation of Pennsylvania's Unfair Trade statutes.

## B.   Statement of the Facts[4]

On November 28, 2008, Law Firm, on behalf of Capital One, filed a collection law suit in the County of Bucks, Pennsylvania, docketed in the Court of Common Pleas as *Capital One Bank (USA), N.A., v. Charles Fratz,* No. 08-12145-34-1. *See* Exhibit "A" to the Complaint.

¶ 37.   Plaintiff, Charles Fratz, filed a timely Answer and New Matter to the Complaint. ¶ 38

By date of March 29, 2011, Law Firm, on behalf of Capital One, served on plaintiff's attorney documents intended by defendants to be presented as evidence at the trial of the case. *See* Exhibits "B", "C", and "D" to the Complaint. ¶ 39

---

[4] The use of "¶" is intended to reference the paragraph in the Amended Complaint from which the factual statement is derived.

5

The evidence includes a contract represented as the operative contract, but which is clearly NOT the operative contract. ¶ 40

The evidence in the form of the Cardmember Agreement proffered by defendants is clearly intended to misrepresent the governing contract between the parties. The application for credit and the card issuance were in the year 2002; the Cardmember Agreement is dated 2005. ¶¶ 41-42

The evidence intended as presented by Goldman & Warshaw is that the phony Cardholder Agreement controlled the terms and conditions of the alleged creditor-debtor relationship. Incredibly, the evidence misrepresented by defendants attempt to foist upon the plaintiff a contract that can have no bearing or relationship to the transaction sought to be enforced by the defendants. ¶¶43-44, 45, 46, 47

The attached Cardholder Agreement was NOT presented as a modification or amendment, or the like. ¶48

Goldman & Warshaw is clearly a debt collector. ¶ 49

These wrongful collection activities include, but are not limited to attaching as exhibits to complaints documentation knowingly not pertinent or relevant, constituting misrepresentation; and proffering as evidence documentation knowingly not pertinent or relevant, constituting misrepresentation. ¶ 51

Plaintiff suffered damages as he was caused to utilize the services of the undersigned attorney to exculpate Plaintiff from these wrongful collection efforts and paid a retainer of $1,800.00, which was a reasonable and necessary expenditure. ¶ 52

6

Discovery by way of deposition of the representative of Goldman & Warshaw, Barry

Rosen, Esquire, dated October 27, 2011, elicits the following with regard to the systemic nature

of the violation of the law by the use of the generic, unrelated contracts:

At 39-40:9-25:

Q.    Can you explain how the agreement that was part of your March 29, 2011 letter[5] to Mr. Fratz's counsel, which was me, and was introduced to the arbitration panel became an exhibit?

[Mrs. Needleman Objects]

Q.    When did you get it [the contract]?

A.    I don't know.

Q.    Do you have any indication or knowledge that that contract that referenced was a part of the Fratz file?

Beginning at page 40:

A.    Not the Fratz file particularly, no.

Q.    Well, then where did it come from?

A.    It came from the client [Capital One].

Q.    Did it come from client, if you know, for any particular file other than the Fratz file?

A.    Not that I'm – no, it did not.

Q.    It came specifically for the Fratz file?

A.    No.

Q.    I'm trying to determine where did Goldman & Warshaw get the copy of this customer agreement that it attached to the letter and presented as an exhibit to the arbitration panel[6].

---

[5]*See* Exhibit "B" to the Complaint.

[6]On October 11, 2011, in pursuit of the collection of the alleged debt, Goldman & Warshaw, by Barry Rosen, Esquire, attended an arbitration hearing in Bucks County and presented the subject

A.      It was sent to us by the client.

Q.      But you don't know when?

A.      I do not.

Q.      You don't know if it was preceding 2005?

A.      I don't.

Q.      Do you know if that particular contract was used as an exhibit in other cases?

Beginning at Page 41:

A.      I believe it was, yes.

        [Discussion]

42-45:22-

Q.      It basically is how does a 2005 card member agreement get attached to a list of exhibits asserting that it is the governing agreement between debtor and creditor going [at page 43] back to transaction that was 2002?

A.      Well, you're asking me to explain something as opposed – and you'll forgive me, but I think  you're asking me to explain something as opposing to asking me a question about it, and I'm not sure where – I'm not sure what I'm supposed to be answering at this point?

Q.      How did the 2005 agreement get assigned by Goldman & Warshaw as an exhibit purporting to govern the relationship of a 2002 relationship?

        MS. NEEDLEMAN: Objection to form.  If you can answer.

A.      We were instructed by our client.

Q.      Okay.  So Capital One gave you this document and said to you, I'm asking you a question, this is the agreement that you have to attach as the exhibit; is that correct?

---

contract, *inter alia,* as an exhibit.  The undersigned counsel was present, and objected to the introduction of the exhibit.  The panel awarded $4,597.61 of the $6,813.20 sought.

A.    They didn't say anything about attaching it as an exhibit. In other words, I
      don't know that they know how – my guess is they don't know anything
      about Rule 1305 in Pennsylvania. We received instructions [at page 44]
      that this was the agreement to use in certain cases, in certain instances.

Q.    Do you have any evidence of any communication that gives this
      instruction?

      MS. NEEDLEMAN: I'm going to object to the question. The question is
      about the Bucks County complaint. You're asking for communication
      between my client and Capital One, which is outside the scope of the
      deposition.

      MR. EISENBERG: Are you instructing him not to answer?

      MS. NEEDLEMAN: He can answer the question. Note my objection.

      [Discussion]

At page 45:

Q.    Go ahead.

A.    We received -- what's your question?

          [Break]

Beginning at 45:19:

A.    We have – there is a memo. Now, I don't know whether –

          THE WITNESS {to his counsel): Has counsel been provided that
          memo?

A.    So, yeah, there is a memo[7] by which we were instructed to use this
      particular terms and conditions or user agreement, if [at page 45] you will,
      for files – for accounts that were open prior to July 1, 2008, and charged
      off after April 1, 2005.

Q.    Okay.

---

[7]After the deposition a copy of the subject memorandum was provided by defendant to Plaintiff's
counsel, marked "Confidential" in accordance with the terms of a Confidentiality Agreement
approved by the Court. The designation of "Confidential" is being challenged under separate
cover.

A.      This file fell into that rubric in that it was commenced prior to July 1, 2008
        and was charged off after April 1, 2005.

At 62:3-10:

Q.      Sir, look at paragraph 41 of Fratz 3 [the Complaint] and read it into the
        record, please.

A.      "The evidence proffered by defendants is clearly intended to represent the
        governing contract between the parties."

Q.      And the answer to the complaint in GW-4 [Goldman & Warshaw's
        response to the Complaint.

A.      "Admitted."

*See* Exhibit "C", a true and correct copy of the relevant pages of the deposition of Barry

Rosen, Esquire, Rule 30(b)(6) representative for Goldman & Warshaw.

*See* Exhibit "D", a true and correct copy of the "Declaration of Richard A. Napolitano"

provided by Defendant's counsel.[8]  The "Declaration of Richard A. Napolitano", provided by

Defendant's attorney, purportedly justifying the use of the contracts indiscriminately by Capital

One and, therefore, by its debt collector.  Mr. Napolitano is assists outside counsel in the

prosecution of collection cases.  This witness for Goldman & Warshaw states, at paragraph 17 of

the "Declaration": "All credit card accounts with COBUSANA [Capital One Bank (USA),

N.A.] that were opened prior to July 1, 2008 and charged off after April 1, 2005 are subject to

the terms and conditions of the 2005 Customer Agreement."

---

[8]Defendant's counsel also provided Plaintiff's counsel with a memorandum from Capital One to
its attorneys which defense counsel marked "Confidential".  Because the information provided
outside of that "confidential" memorandum has been provided separately and apart from the
latter, a motion to declare the item as "not confidential" will be filed forthwith.
"

This incredible admission basically sets forth that there is an arbitrary assignment or delegation of Cardmember Agreements to collection cases based **NOT** on the date of issuance of the respective credit card, but rather on a period of time covering July 1, 2008 and back in time to a nondescript date. This apparently random and illogical attribution further designates that the respective credit card had to have been charged off after April 1, 2005[9]. Capital One dates back to 1988.

Paragraph 12 of the "Declaration" states that Plaintiff was sent the Customer Agreement when the credit card was issued in 2002, but there is presented to copies of same, and that includes any terms and conditions of the 2002 operative Agreement.

It is absolute that the Cardmember Agreement upon which ALL issued credit cards are based, regardless of any alleged subsequent amendments, modifications, or the like, are those issued when the credit card is issued, and, without that agreement, subsequent agreements do **NOT** correlate or relate. A 2005 Cardmember Agreement, by itself, particularly one not designated within the four corners of its own documents as an amendment or modification, does **NOT** govern a prior year's issued credit card(s).

This is the essence of Plaintiff's class action.

This admission is the clearest evidence that the use of the wrong Cardmember Agreement is endemic and intentional, and is certainly and knowingly engaged in by the "debt collectors" for Capital One, including Defendant.

Clearly, this practice of clearly and knowingly utilizing improper Cardmember Agreements to substantiate the existence of an operative contract allegedly manifesting the terms

---

[9]Of course, Capital One is the entity that determines the date of "charge-off" which it can do, essentially, at its will.

11

and conditions by and between the issuer and the debtor provides the debt-collector attorneys with an added imprimatur that all of the charges sought and ostensibly permitted by the false agreement are correct. These actions by collection attorneys place substantially more stress upon these "least sophisticated consumers" because the imprimatur of attorneys pressing for collection imparts an air of validity because of the consumer [mis]perception of lawyers. As stated in the Third Circuit's decision in *Crossley v. Lieberman*, 868 F.2d 566, 569 (3d. Cir. 1989), referencing *H. Rep. No. 405, 99th Cong. 2d Sess (1985) reprinted in 1986 U.S. Code Cong. & Ad. News 1752,1755:* "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice. A debt collection letter on an attorney's letterhead conveys authority and credibility."

Defendants' false and deceptive invocation of a false contract is the epitome of intentional sophistry in the universe of debt collectors.

Plaintiff is one victim among hundreds that are believed to have been persons sued and/or from whom collection is sought, utilizing fake documentation throughout New York, New Jersey and Pennsylvania.

## III.   CLASS ACTION CERTIFICATION

### A.   Standard for Class Certification

The United States Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89,99 (1981). "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiff's and counsel's ability to fairly and adequately protect class

12

interests." *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d

283, 308 (3d Cir 1998) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products*

*Liability Litigation,* 55 F.3d 768, 799 (3d. Cir. 1995), *cert denied*, 116 S. Ct 88 (1995). For a law

suit to be maintained as a class action under Rule 23, Plaintiffs must allege facts establishing

each of the four threshold requirements of subsection (a) of the rule, which states:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all only if (1) the class is no numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

*See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 2246 (3d Cir. 1975), *cert. denied,* 41
U.S. 1011 (1975).

Plaintiffs must allege that this action qualifies for class treatment under at least one of the

subdivisions of Rule 23(b). Under Rule 23(b)(2), a class action will be appropriate where "the

party opposing the class has acted or refused to act on grounds generally applicable to the class,

thereby making appropriate final injunctive relief or corresponding declaratory relief where with

respect to the class as a whole." Under Rule 23(b)(3), a class action will be appropriate where

"the court finds the questions of law or fact common to the members of the class predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for the fair and efficient adjudication of the controversy."

Plaintiffs bear the initial burden of advancing reasons why a putative class action meets

the requirements of Rule 23. However, Plaintiffs' burden is not a heavy one. *See Piel v.*

*National Semiconductor Corp.,* 86 F.R.D. 357, 368 (E.D. Pa. 1980). Once plaintiffs have

demonstrated a preliminary legal showing that the requirements of Rule 23 have been met, the

burden of proof is upon the defendants to demonstrate otherwise. 2 H. Newberg, <u>Newberg on</u>

Class Actions (3d Ed. 1992)("Newberg") [SEC} 7.22 at 7-75 to 7-75.  The Third Circuit has long recognized and adopted a liberal construction of Rule 23.  *See, e.g. Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir. 1970), *cert. denied.,* 398 U.S. 950 (1970) ("The interests of justice require that in a doubtful case … any error, if there is to be one, should be committee in favor of allowing the class action."; *Spark v. MBNA Corporation,* 178 F.R.D. 431 (D. DEL. 1998).

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court.  *Gulf Oil Co.,* 452 U.S at 100.  A decision to grant class certification is not a final order, it may be altered or amended as the case progresses towards resolution on the merits. Fed. R. Civ. P. 2(c(1)(c).  In determining whether an action may be maintained as a class action, the court is not to conduct an exploration of the merits when deciding upon certification of a class.  *Eisen v. Carlisle & Jacqueline,* 417 U.S. 157, 177-78 (1974); *Kahan,* 424 F. 2d at 168' *Williams v. Empire Funding Corp.,* 183 F.R.D. 428 (E.D. Pa. 1998); *Spark v. MBNA Corporation, supra.*

Moreover, since class determination is made at the pleading stage of the action, the substantive allegations in the complaint are accepted as true for purposes of the class motion. *Eisen,* 417 U.S. at 177, 183 F.R.D. at 439; *Stewart v. Associates Consumer Discount Co.*, 1 F. Supp 2d 469 (E.D. Pa 1998).

## B.  The Proposed Class Satisfies The Requirements OF Rule 23(a) Of The Federal Rules of Civil Procedure

Rule 23(a) establishes the four prerequisites for the maintenance of a class action:

(1)  The class is so numerous that joinder of all members is impracticable;

(2)  There are questions of law or fact common to the class;

14

      (3)     The claims or defenses of the representative parties are typical of the

claims or defenses of the class; and

      (4)     The representative parties will fairly and adequately protect the interests of

the class.

This action should be certified as a class action because, as discussed below, all of the

requirements of Rule 23(a) have been met.

### C.    The Requirements of Rule 23(a)(1)-(4) Are Met

Rule 23(a) sets forth four requirements to be satisfied in order for a case to proceed as a

class action:

> One or more of a class may sue or be sued as representative parties
> on behalf of all only if (1) the class is so numerous that joinder of
> all members is impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Each of these four criteria is satisfied here.

### 1.   The Class Is So Numerous That Joinder Is Impracticable.

The first requirement for maintaining a class action under Rule 23(a) is that the proposed

class be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1).

This requirement does not necessitate a showing that joinder is impossible, but only that joining

all class members would be "impracticable," *i.e.*, difficult or inconvenient. *See In re Flat Glass*

*Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999)("*Flat Glass*")*,* 191 F.R.D. at 478.

"[T]here is no magic minimum number necessary to satisfy the ... numerosity

requirement." *Seidman,* 157 F.R.D. at 359. When considering the number of class members

necessary to satisfy the numerosity requirement, this court has recognized that classes as small as

25 may prove sufficient. *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463

(E.D. Pa. l968). *See also Stewart v. Abraham*, 275 F.3d 220, 2260227 (3d Cir. 2001) (a class

with more than 40 will satisfy the numerosity requirement.) In addition to the number of class

members, the court should also consider whether the geographic distribution of class members

makes joinder impracticable[10], as well as "the relative ease or difficulty in identifying members

of the class for joinder purposes." *Plastic Cutlery Antitrust Litig.,* 1998 WL 135703, at *3

(E.D.Pa. Mar. 20, 1998)(*quoting Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 110 (E.D.

Pa. 1992)). Lastly, when considering the numerosity of the class, "[i]t is proper for the court 'to

accept common sense assumptions in order to support a finding of numerosity.'" *Cumberland*

*Farms, Inc. v. Browning Ferris Ind.*, 120 F.R.D. 642, 645 (E.D.Pa. 1988) (*quoting Wolgin v.*

*Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D. Pa. 1979)).

Based upon information and belief, plaintiffs alleged that, at a minimum, the class

consists of hundreds of persons[11] who are disbursed throughout three states: New York, New

Jersey and Pennsylvania. There are at least 50 putative class members as shown by the dockets

in Bucks County and Montgomery County, both in Pennsylvania. If the class is certified, fact

---

[10]*See Flat Glass,* 191 F.R.D. at 478; Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.06 at 3-30 (3d ed. 1992) (citing cases).

[11] While a class of this size is certainly numerous, it is not so numerous as to pose manageability problems, and is well within the range of many other cases which have previously been certified by federal courts. *See Prudential,* 148 F.3d at 309 (certifying a class consisting of over 8 million members); *Stephenson,* 177 F.R.D. at 284 (finding a class in excess of 3 million members satisfied the numerosity requirement); *NASDAQ*, 169 F.R.D. 493 (antitrust class of over one million stock-investors which was settled for over $1 billion, *see* 187 F.R.D. 465 (S.D.N.Y. 1998)); *In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991) (class of several million airline ticket purchasers certified).

16

discovery will elicit exact numbers, names, addresses, and other vital information to proceed this case to trial.

Accordingly, plaintiffs satisfy the numerosity requirement of Rule 23(a)(1).

## 2.   **Common Questions of Law or Fact Exist**

The second requirement of Rule 23(a), commonality focuses on whether there exist questions of law or fact common to the class.[12]  The Third Circuit has "a very low threshold for commonality."  *E.g., Flat Glass*, 191 F.R.D. at 478.  In particular, the commonality requirement may be satisfied by a single common issue and is thus easily met.  *Baby Neal, et al. v. Robert P. Casey, et al.*, 43 F.3d, 48, 56 (3rd Cir. 1994); *see also* H. Newberg & A. Conte, *supra* § 3.10, at 3-50.

Where the defendants have engaged in standardized conduct toward members of the proposed class, such as utilizing generic, inapplicable and knowingly unrelated Cardmember Agreements to the issued credit cards, seeking collection and utilizing the wrong agreements as evidencing the terms and conditions of the relationship by and between the card issuer and the alleged debtor, the commonality requirement is met.  *See McCall v. Drive Financial Services, LP*, 236 F.R.D. 246.249 (E.D. Pa. 2006).  This issue is the sole issue.

---

[12]The commonality and typicality requirements of Rule 23 overlap to a great degree and courts often discuss these concepts together. *See, e.g., Hassine v. Jeffes,* 846 F.2d 169, 176-77 n.4 (3d Cir. 1988)("*Hassine*"); *Williams,* 183 F.R.D. at 438 (noting that "[b]oth commonality and typicality serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence")(citation omitted); *Gaskin,* 1995 WL 355346, at *2-3 (same). However, there are differences: "'commonality' . . . evaluates the sufficiency of the class itself, [while] 'typicality ' . . . evaluates the sufficiency of the named plaintiff." *Hassine,* 846 F.2d at 176-77 n.4.  In the interest of completeness, plaintiffs discuss commonality and typicality separately herein to illustrate that each requirement is satisfied here.

17

In any event, not all questions of fact or law raised in the litigation need be common as long as one issue is common to all class members. *Baby Neal for and by Kanter v Casey,* 43 F.3d 48, 56-57 (3d Cir. 1994); *Lake v. First Nationwide Bank,* 156 F.R.D. at 624; *Tenuto v. Transworld Systems, Inc.,* 2000 WL 1470213, \*2 (E.D. Pa. 2000).

There is a common question of law and a common question of fact at issue in this action. The primary question of fact is: (1) Does the defendant utilize a standard, generic, Cardmember Agreement knowingly not correlated or related to the issuance of the credit cards for which debt has allegedly accrued; and the primary question of law is: (2) Whether this practice violates the FDCPA and Pennsylvania's UTPCPL and Fair Credit Extension Uniformity Act.

The identification of class member has not been provided to plaintiff by defendant; however, independent research into only two Counties: Bucks and Montgomery, reveal a sufficient number of cases to require class treatment.

The test of commonality has been met.

### 3.    The Claims of the Representative Plaintiffs Are Typical of the Claims of the Class

Rule 23(a)(3) requires that the Representative Plaintiff's claims or defenses be "typical" of the claims or defenses of the class. The typicality requirement "is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less coextensive with those of the class." *Cumberland Farms,* 120 F.R.D. at 646 (citation omitted). The Representative Plaintiffs' claims are "typical" where, like here, they arise from the same course of conduct giving rise to the claims of the other Class members, and where the claims are based on the same legal theory. *See Baby Neal,* 43 F.3d at 58.

18

"The threshold for establishing typicality is low." *Seidman v. American Mobile Systems, Inc.*, 157 F.R.D. 354, 360 (E.D.Pa. 1994). Thus, typicality "does not require that the [Representative Plaintiffs'] circumstances be the same, only that the harm complained of be common to the class." *Gaskin,* 1995 WL 355346, at *3. In fact, "'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. American Sales Litigation,* 148 F.3d 283, 311 (quoting *Baby Neal*, 43 F.3d at 58).

As explicated above, all class members were the subject of the use of the generic, inapplicable Cardmember Agreements in attempts to collect a debt. Defendant has admitted that the Cardmember Agreement I used regardless if applicable to the credit issued. Defendant has admitted that the use of the generic, inapplicable, Cardmember Agreement is used regardless if it is the appropriate agreement, and Defendant finally admits that the 2005 Cardmember Agreement, at least, is used for cases for credit cards issued before July 1, 2008, which were charged off after April 1, 2005, representing a huge number of cases nationally for which the generic contract was used improperly. *See* N.T. Rosen, 46:2-4.

There are **NO** unique facts or circumstances that would render Paone or Walter as atypical.

The typicality requirement is met.

### 4.    The Representative Plaintiff Will Fairly and Adequately Protect the Interests of the Class

The fourth and final requirement of Rule 23(a) is that "the [R]epresentative [Plaintiffs] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the

Third Circuit, the test for adequacy of representation "involves a two-pronged inquiry: (1) whether plaintiffs' counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) whether plaintiffs' interests are antagonistic to those of the class." *Williams,* 183 F.R.D. at 440 (*citing Barnes,* 161 F.3d at 141-42; *Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir. 1984) ("Weiss").

As for the first prong, the requirements of Rule 23(a)(4) are satisfied. The Representative Plaintiffs are represented by counsel who are well qualified and possess substantial experience in the conduct of consumer class actions. These lawyers are ready, willing and able to devote the resources necessary to litigate this case vigorously and to see it though to the best possible conclusion. Thus, "there is no ground for supposing that [the Representative Plaintiffs] will not adequately represent the class." *In re Glassine & Greaseproof Paper Antitrust,* 88 F.R.D. 302 (1980). *See* the Certifications of Stuart A. Eisenberg, Esquire and Carol B. McCullough, Esquire, attached hereto and representing a comprehensive biography of plaintiffs' counsel. They have participated in more than forty (40) class actions cases, all but three of which involved consumer protection and consumer rights. Eighteen have been cases invoking the FDCPA. Eight of these cases resulted in class certification, all of which were settled on a class basis amicably after the Court's grant of class certification.

As for the second prong, the Representative Plaintiff and each member of the proposed class have similar interests. As noted earlier, there are no known antagonisms between the claims of the Representative Plaintiff and the class. Thus, each member of the putative class has the same interest in proving the existence of defendant's violations of the FDCPA, determining the appropriate measure of damages, and in securing declaratory and injunctive relief to bring an

20

end to defendants' unlawful activities.  The Representative Plaintiff has fully satisfied the

adequacy requirements of Rule 23(a)(4).

### D.      The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to satisfying the requirements of Rule 23(a), a plaintiff seeking class

certification must satisfy one or more of the alternative criteria set forth in the subparts of Rule

23(b).  Plaintiff's claims satisfy subpart Rule 23(b)(3) which provides:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to
> other available methods for the fair and efficient adjudication of
> the controversy.

This case readily satisfies these requirements.

### (1)      Common Questions of Law or Fact Predominate

"The predominance requirement is satisfied unless it is clear that individual issues will

overwhelm the common questions and render the class action valueless."[13]  *Nasdaq,* 169 F.R.D.,

at 517.  The issue of fact are common for all members of the class.  Furthermore, the following

questions of law are common to all class members claims, and predominate over any individual

issues that could conceivably be raised:

The issue of fact for all members of the class and the class representatives is the same, as

described, *supra.* with *de minimus* variation.  The questions of law governing the rights of each

member of the Class are the same as they relate to plaintiff, and involve the all-pervasive issue as

---

[13]Of course, to satisfy Rule 23(b)(3), "the plaintiff is only required to demonstrate
predominance, not exclusivity, of common questions." *Hedges Enterprises*, 81 F.R.D. at 473
(*citing Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 695 (E.D. Pa. 1977)); *see also Hanrahan v. Britt,*
174 F.R.D. 356, 365 (E.D. Pa. 1997) ("Rule 23(b)(3) requires a predominance of common
questions, not a unanimity of them."); *NASDAQ,* 169 F.R.D. at 517

to the legality of an attempt to collect a credit card debt, or the collection of a credit card debt, knowingly utilizing improper and inappropriate forms intended for the "least sophisticated to succumb to do no inquiry and to accept a contract that clearly cannot define the terms and conditions of the purported contract. (1) Whether the use of these contracts is violative of the laws that states that attempts to collect, or the collection of debt, not authorized by contract or law, and the use of misrepresentative documentation, constitute false and deceptive actions; and (2) In fact, is defendant employing the use of misrepresentative documentation to attempt to collect, or collecting, a debt. Therefore,

      a      Has defendant violated 15 U.S.C. § 1692a, *et seq.;*

      b.     Has defendant violated 73 P.S. § 2270.1, *et seq.;*

      c.     Has defendant violated 73 P.S. § 201-1, *et seq.*

Then:

      a      Have the members of the Class, including plaintiff, been caused to suffer damages as a result of the acts of the defendants?

      b.     Is plaintiff and the members of the Class entitled to recovery of damages as follows:

           (i)     compensatory damages;

           (ii)    other special damages;

           (iii)   punitive damages;

           (iv)   statutory damages;

        (v)     treble damages or other damages as a multiple of compensatory and other special damages;

        (vi)    costs;

        (vii)   attorney's fees;

        (viii)  injunctive relief;

        (ix)    disgorgement by defendant of any sums collected, interest and profits thereon; and

        (x)     such other relief as the Court may deem appropriate.

**(b)**    **The Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plainly a class action is not only the most efficient and convenient method to resolve this controversy, but given the number of smaller class members injured by the conduct alleged in this case, it is the only "fair" and "efficient" means practically available to adjudicate this controversy.

As the court stated in *Cumberland Farms*, "the utility and necessary of presenting the claims asserted in this action through the class action method is substantial since a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Id.*, 120 F.R.D. at 647-8.

Proceeding as a class action will tend to equalize the bargaining power between plaintiffs as a group and defendant. *See DuPont Glore Forgan Inc. v. American Tel. & Tel. Co.*, 69 F.R.D. 481, 487 (S.D.N.Y. 1975) ("The sheer disparity of economic forces suggests the death knell for those claims if individual actions are required").

Plaintiff sees no problems in the management of this lawsuit.[14]   Indeed, this class action will be less complicated and less difficult to manage than class actions that have been certified and successfully litigated.  The claims of the class members all arise from virtually identical situations, with no complications or variations of any substance.  Identification and notification of the class members will be easily managed as class members' names and addresses are contained in the defendants' own records.  *Plastic Cutlery*, 1998 WL 135703 at *7.

Finally, this action will allow defendant to litigate plaintiff's class' claims only once. They "will be protected from repeated and costly litigations throughout the country if they ultimately...prevail."  *Fine Paper*, 82 F.R.D. at 155; *Flat Glass*, 191 F.R.D. at 489 ("the predominance of common questions inherent in this action would be beneficial to defendants in that they need defend against plaintiffs' allegations in one proceeding and, if successful, need not fear individual actions with respect to the same issues ad infinitum.").

A class action stands not only as the "superior" method, but, in fact, the only practical means by which the Representative Plaintiff and the class can litigate their claims against the defendants. Plastic Cutlery, 1998 WL 135703 at *7 ("refusing to certify the proposed class might preclude recovery for many putative class members who lack the resources to pursue individual claims, or whose financial injuries are insufficiently grave to make pursuit of individual claims worthwhile").

---

[14]Even if there were some manageability problems, courts are generally loathe to deny class certification based on vague or speculative problems with case management. *In re Sugar Antitrust Litigation*, 73 F.R.D. 322, 356 (E.D.Pa.1976) ("denial of class certification because of suspected manageability problems is disfavored among both the courts and the legal commentators because a court refusing to certify a class action on the basis of a vaguely perceived manageability obstacles is acting counter to the policy behind Rule 23, and because that court is discounting unduly its power and creativity in dealing with a class action flexibly as difficulties arise"); *Nasdaq*, 169 F.R.D. at 528 ("Courts are generally loathe to deny class certification based on speculative problems with case management").

Once the common questions of liability are resolved, all that remains is the mechanical act of computing damages suffered by each class member. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), *cert denied*, 429 U.S. 891 (1976)

### c. Rule 23(g) Factors

Rule 23, as amended, required that this Court "must consider" four additional factors in appointing class counsel. *See* Fed. R. Civ. P. 23(g)(1)(C).

These factors are: (a) the work counsel has done in identifying and investigating the potential claims; (b) counsels' experience in handling class actions, other complex litigation and claims of these types asserted in the action; (c) counsels' knowledge of the applicable law; (d) the resources that counsel will commit to representing the class.

In the Certifications of Stuart A. Eisenberg and Carol B. McCullough, filed herewith, counsel attest to the following:

a. The work counsel has done in identifying and investigation the potential claims;

b. Counsels' experience in handling class actions, other complex litigation and claims of these types asserted in this action;

c. Counsels' knowledge of the applicable law; and

d. The resources that counsel will commit to representing the class.

These Certifications reflect that plaintiffs' counsel have spent considerable effort in identifying and investigating potential claims and has concluded that the claims set forth in the Complaint under 15 U.S.C. §§ 1692e and 1692f are the only viable claims to be lodged by the Class. This certification also recites counsel's involvement in numerous other fair debt and other consumer protection class cases, and recognition by the Court and others of capable handling of

25

assorted class cases. The certifications speak to plaintiffs' counsels' "knowledge of the applicable law" with over forty years and twenty years of practice, respectively, and the credentials to act as counsel in this case. The mandate of Rule 23(g),as amended, is met by plaintiffs' counsel.

      **d.**    **Trial Plan**

Counsel for Plaintiff recognizes that class discovery must yet take place, which will reveal the exact number, names, addresses, and actual damages incurred, the latter to be represented by actual payments made vis-à-vis actual collections made by defendant in utilizing the misrepresentative contracts. Needless to say, other damages as set forth in the Complaint and this Memorandum of Law will be sought, as well.

It is believed and therefore averred that trial will be relatively simple and straight forward. The trier of facts' review of defendant's conduct from the perspective of the "least sophisticated consumer" will result in a determination as to whether defendants violated the FDCPA.

**E.**    **PROPOSED CLASS DEFINITION**

The above-named Plaintiff brings this action on behalf of himself and:

All persons who have been, or continue to be, the subject of attempts to collect a credit card debt by Defendant, from and including April 14, 2010, for which the Defendant uses as corroborative exhibits and/or as evidence written agreements represented by defendant as the written agreements governing the parties' relationship and serving as the written basis therefor and for the liability asserted against the alleged debtors/consumers, which attached exhibits and/or evidence are clearly and knowingly inapplicable, and do not represent any contractual relationship between the parties as post-dating the date of the credit card issuance.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff's motion should be granted in all respects as having

met all of the requirements of Rule 23(a), Rule 23(b)(3) and Rule 23g.

Respectfully submitted:

Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg, LLC
65 West Street Road, Suite A-105
Warminster, PA 18974
Tel. (215) 957-6411
Fax. (215) 957-9140
mlawoffice@aol.com

November 22, 2011

**COUNSEL FOR THE REPRESENTATIVE
PLAINTIFF**

27

**STUART A. EISENBERG, ESQUIRE**
**Attorney I.D. 12433**
**MCCULLOUGH EISENBERG, LLC**

**Education:**    **Graduated Hun School Princeton, New Jersey, 1957.**
**Attended Cornell University, 1957-1959**
**Graduated Temple University, School of Business, President's**
**Scholar, 1964**
**Graduated Villanova Law School, 1967.**

**Military**
**Service:**    **United States Army, Signal Corps, Instructor, 1960-1962; Honorable**
**Discharge, 1967.  While in the service, attended University of Georgia,**
**August Extension.**

**Employment:**
**1967:  Law Clerk, Honorable Juanita Kidd Stout**
**1967-1969: Modell, Pincus, Hahn & Reich: Creditor's Rights Law Firm:**
**Primarily engaged in representation of creditor's and debtors, and trustees**
**in bankruptcy.  Representation of consumer finance and consumer discount**
**companies**
**1969-1973: House counsel with Investment Annuity, Inc. a public insurance**
**company, primarily engaged with regulatory approval and compliance.**
**1973-1976: Providers Benefit Company: General Counsel, Secretary: Public**
**Company with subsidiaries in life insurance, accident and health insurance,**
**consumer lending, and health care facilities, primarily engaged in regulatory**
**approval compliance.**
**1976-1990: Engaged in Private Practice, primarily representing creditors:**
**Representative Clients:  GMAC, Chrysler Credit Corporation, Fidelity**
**Bank, Supermarkets General Corporation, all with an emphasis on**
**representing creditor interests in bankruptcy, collections, replevin, and**
**defense.**
**1990-1998: Did not practice law.**
**1998-Present: McCullough & Eisenberg, P.C. (predecessor in interest to**
**McCullough Eisenberg, LLC), a limited general practice with an emphasis**
**on representation of debtors and certain creditors, such as Electronic Data**
**Systems, Inc. and Wendover Financial Corporation.  Emphasis on creditors'**
**and debtors' rights in bankruptcy, and class actions.  Since 1998, the**
**majority of class actions have been consumer oriented involving litigation**
**against mortgage companies, collection agencies and other debt collectors.**
**Class action defendants in actions brought by McCullough & Eisenberg, P.C.**
**have been Countrywide Home Loans, Inc., Washington Mutual Bank, N.A.,**

Chase Home Finance LLC, EMC Mortgage Corporation, GMAC Mortgage Corporation, Wells Fargo Home Mortgage Corporation, ABN AMRO Mortgage Corporation, Homeq, Cenlar, FSB, Midland Mortgage Corporation, and others.

Publications: Co-authored <u>Pennsylvania Collection Law</u>, <u>Creditors' Rights in Pennsylvania</u> <u>Lender Liability in Pennsylvania:</u>  Manuals issued with concurrent lectures throughout Pennsylvania for PESI.

Associations: Bar Association of Bucks County, Pennsylvania
National Association of Consumer Bankruptcy Attorneys
Eastern District of Pennsylvania Bankruptcy Bar
Fellow, Litigation Counsel of America

Board
Membership: Alumni Board of The Hun School of Princeton, NJ
Strategic Planning Board of The Hun School of Princeton, NJ

**CAROL B. MCCULLOUGH, ESQUIRE**
**Attorney I.D. #56424**
**MCCULLOUGH EISENBERG, LLC**

**Education:**    Graduated Abington Senior High School, Pennsylvania, 1982
                 Graduated University of Delaware, With Honors, 1986
                 Graduated Widener University School of Law, 1989

**Employment:**

1989-1990: Stuart A. Eisenberg, P.C.: Creditor's Rights Law,
Bankruptcy, Debtor's Rights, Litigation Practice.

1991-1994: Steven B. Zats & Associates: Emphasis on representing
creditor interest in collection cases against individuals, corporations,
and on behalf of doctors against insurance companies.

1994-present: McCullough Law Offices, P.C. and McCullough &
Eisenberg, P.C. (predecessor in interest to McCullough Eisenberg,
LLC): Representation of class representatives and class action
plaintiffs.  Emphasis on creditor's rights in collections against
insurance companies under the PA Motor Vehicle Law, collections on
behalf of large creditors, such as: newspapers and doctors.
Representation of debtor's in bankruptcy.  Representation of injured
persons in personal injury litigation.  Representation of defendants in
criminal law matters.  Contract negotiation and litigation.  Extensive
representation of health care providers in recovery from insurers;
and worker's compensation on behalf of providers.  Class action
defendants in actions brought by McCullough & Eisenberg, P.C. have
been Countrywide Home Loans, Inc., Washington Mutual Bank,
N.A., Chase Home Finance LLC, EMC Mortgage Corporation,
GMAC Mortgage Corporation, Wells Fargo Home Mortgage
Corporation, ABN AMRO Mortgage Corporation, Homeq, Cenlar,
FSB, Midland Mortgage Corporation, and others.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES FRATZ, *ET AL.*, | : | CIVIL ACTION |
| | : | |
| v. | : | CASE NO.  11-cv-02577 MSG |
| | : | |
| GOLDMAN & WARSHAW, P.C. | : | |

**CERTIFICATION OF STUART A. EISENBERG IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Stuart A. Eisenberg, certify the following to be true and correct:

1.      I am an adult individual, a member of the bar of this Court in good standing.  I am counsel for plaintiffs in the above-captioned action.  This Certification is submitted in support of Plaintiffs' Motion for class certification.

2.      I am a partner with Carol B. McCullough, Esquire of McCullough Eisenberg, LLC.  Each and both of us have been involved in extensive consumer litigation, including class actions.  Carol McCullough and I have been also involved in a series of class actions the plaintiffs of which were medical supply companies against various insurers.  The basis of the latter three cases involved wrongful reimbursements.  For the last eleven (12) years, the overwhelming majority of our clientele has consisted of consumers in financial difficulty, and/or consumers who have been subjected to creditor abuses.

3.      I was admitted to the Pennsylvania and United States District Court bars in November of 1967.  From 1990 to 1998, I did not practice law and I was not a member of any bar.  I am admitted to practice and in good standing before the United States Court of Appeals for the Third Circuit, before which I have had eight (8) appellate matters since 1999.  I am admitted to the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Courts for the Eastern District and Middle District of Pennsylvania,

and the Supreme Court of Pennsylvania. I have been admitted to the United States Bankruptcy

Court for the District of New Jersey and the New Jersey Superior Court, Appellate Division, and

Law Division, on a *pro hac vice* basis.

    4.    *See* the attached Curriculum Vitae for educational and work experience.

    5.    *See* the attached Curriculum Vitae for publications.

    6.    Class Action Litigation Experience[1]. *See* attached list of Class Action Cases. I

have been appointed as plaintiffs' class counsel in seven (7) cases, all of which resulted in

settlements on a class action basis, to wit:

> *Freedom Medical Supplies, Inc., et al. v. AAA Mid Atlantic Insurance Company, et al.,* CCP, Philadelphia County, May Term 2003, No. 03305;
>
> *Freedom Medical Supplies, Inc., et al. v. Nationwide Insurance Company, et al.,* CCP, Philadelphia County, May Term 2003, No. 03296;
>
> *Gary B. Hall, et al. v. Midland Group and Midfirst Bank, et al.,* U.S.D.C., E.D. Pa. 99-cv-3108 JW; *affirmed,* U.S.C.A., 3d Circuit 2000;
>
> *Jeremiah Boney, et al. v. Cenlar, FSB,* U.S.D.C., E.D. Pa. 03-cv-2258 MM, combined with *Heyward Simpkins, et al. v. Cenlar, FSB,* U.S.D.C., Pa. 02-cv-4470 MM;
>
> *Robert Clark, et al. v. EMC Mortgage Corporation,* CCP, Bucks County, No. 03-01810;
>
> *Sigma Supplies Corporation, et al. v. Progressive Halcyon Insurance Company, et al.,* CCP, Philadelphia County, August Term 2003, No. 02968.

    7.    FDCPA Litigation Experience: *See* attached list of Class Action FDCPA Cases.

    8.    Appellate Experience:

---

[1] But for *Sigma, Freedom Medical and James T. Robinson,* I was lead counsel for plaintiffs in every case responsible for all investigation, pleading, discovery, motion practice, litigation, and any applicable appeals.

a.     Since 1999, I have been lead counsel in eight appeals to the United States

Court of Appeals for the Third Circuit; one appeal to the New Jersey Superior Court, Appellate

Division.  Every appeal has been a consumer-related matter.

9.     Association Memberships.

Bankruptcy Bar of the Eastern District of Pennsylvania;
Bucks County Bar Association
National Association of Consumer Bankruptcy Attorneys.
Eastern Bankruptcy Conference
Fellow:  Litigation Counsel of America

10.    Rule 23(g) Factors:

a.     I have spent more than 45 hours in identifying, investigating, confirming,

drafting documents, attending hearings, and originating one (1) and attending one (2) depositions

of defendant's representative, in addition to other promulgated discovery in this case, and more

than 110 hours cases related with similar issues of fact and issues of law.  In addition, counsel

has engaged in substantial research in the law and the applicability of the law to the factual

circumstances prevalent throughout the class.

b.     I have extensive experience in class actions, other complex litigation,

including litigation involving the FDCPA.  *See* the two attached list of c lass action cases in

which I have been involved and the FDCPA cases in which I have been involved.

c.     My knowledge of the applicable law is significant as evidenced by the

litigation set forth above and in which I have been involved.

d.     I am prepared to commit the necessary resources in order that the class

shall be adequately and capably represented.

I certify that each and all of the above is true and correct to the best of the knowledge, information, belief and recollection of the undersigned.

November 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES FRATZ, *ET AL.*, | : | CIVIL ACTION |
| | : | |
| v. | : | CASE NO.  11-cv-02577 MSG |
| | : | |
| GOLDMAN & WARSHAW, P.C. | : | |

_____

_____

## CERTIFICATION OF CAROL B. MCCULLOUGH IN
## SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, Carol B. McCullough, certify the following to be true and correct:

1.      I am an adult individual, a member of the bar of this Court in good standing.  I am co-counsel for plaintiffs in the above-captioned action.  This Certification is submitted in support of Plaintiffs' Motion for class certification.

2.      I am a partner with Stuart A. Eisenberg, Esquire of McCullough Eisenberg, LLC. Each and both of us have been involved in consumer litigation, including class actions.  Stuart A. Eisenberg and I were also involved in a series of class actions the plaintiffs of which were medical supply companies against various insurers.  The basis of the latter three cases involved wrongful reimbursements.  For the last eleven (11) years, the overwhelming majority of our clientele has consisted of consumers in financial difficulty, and/or consumers who have been subjected to creditor abuses.

3.      I was admitted to the Pennsylvania and United States District Court bars in1989. I am admitted to the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Court for the Eastern District and the Supreme Court of Pennsylvania. I had been admitted to the United States Bankruptcy Court for the District of New Jersey and the New Jersey Superior Court, Appellate Division and Law Division.

4.      *See* the attached Curriculum Vitae for educational and work experience.

5.      Class Action Litigation Experience. *See* attached list of Class Action Cases. I

have been appointed as plaintiffs' class counsel in eight (8) cases, all of which resulted in

settlements on a class action basis, to wit:

> *James T. Robinson, et al. v. Countrywide Home Loans, Inc., et al.,* U.S.D.C., E.D. Pa. 97-cv-2747 HB
>
> *Freedom Medical Supplies, Inc., et al. v. AAA Mid Atlantic Insurance Company, et al.,* CCP, Philadelphia County, May Term 2003, No. 03305;
>
> *Freedom Medical Supplies, Inc., et al. v. Nationwide Insurance Company, et al.,* CCP, Philadelphia County, May Term 2003, No. 03296;
>
> *Gary B. Hall, et al. v. Midland Group and Midfirst Bank, et al.,* U.S.D.C., E.D. Pa. 99-cv-3108 JW; *affirmed,* U.S.C.A., 3d Circuit 2000;
>
> *Jeremiah Boney, et al. v. Cenlar, FSB,* U.S.D.C., E.D. Pa. 03-cv-2258 MM, combined with *Heyward Simpkins, et al. v. Cenlar, FSB*, U.S.D.C., Pa. 02-cv-4470 MM;
>
> *Robert Clark, et al. v. EMC Mortgage Corporation,* CCP, Bucks County, No. 03-01810;
>
> *Sigma Supplies Corporation, et al. v. Progressive Halcyon Insurance Company, et al.*, CCP, Philadelphia County, August Term 2003, No. 02968.

6.      FDCPA Litigation Experience: *See* attached list of Class Action FDCPA Cases.

7.      Association Memberships.

> Bankruptcy Bar of the Eastern District of Pennsylvania;
> Bucks County Bar Association
> National Association of Consumer Bankruptcy Attorneys.

8.      Rule 23(g) factors:

a.      I have spent more than 45 hours in indentifying, investigating, confirming,

reviewing drafted documents, reviewing the work promulgated by my partner, Mr. Eisenberg,

and reviewing applicable discovery responses in cases with the same factual basis and legal

issues. I have met with plaintiffs, along with Mr.; Eisenberg. In addition, I have assisted co-counsel in research in the law and the applicability of the law to the factual circumstances prevalent throughout the class.

        b.     I have extensive experience in class actions, other complex litigation, including litigation involving the FDCPA. *See* the two attached list of c lass action cases in which I have been involved and the FDCPA cases in which I have been involved.

        c.     My knowledge of the applicable law is significant as evidenced by the litigation set forth above and in which I have been involved.

        d.     I am prepared to commit the necessary resources in order that the class shall be adequately and capably represented.

I certify that each and all of the above is true and correct to the best of the knowledge, information, belief and recollection of the undersigned.

November 21, 2011

## CLASS ACTION CASES:
## CAROL B. MCCULLOUGH AND STUART A. EISENBERG

**Bryan Anderson, et al. v. Option One Mortgage Corp., CCP, Bucks County, No. 0702994-27-1. Settled on an individual basis.**

**Michael Bickle, et al. v. Chase Manhattan Mortgage Corp., et al., U.S.D.C., E.D. Pa. No. 02-cv-2191. Settled on an individual basis.**

**Michael W. Blake, et al. v. Washington Mutual Bank, N.A., CCP, Philadelphia County, May Term 2003, Number 00308. Summary Judgment for defendant.**

**Michael W. Blake, et al. v. Washington Mutual Bank, N.A., U.S.D.C., E.D. Pa., No. 01-cv-4641 BWK. Summary Judgment for defendant**

**\*Michael W. Blake, et al. v. Washington Mutual Bank, N.A., U.S.D.C., E.D. Pa., No. 02-cv-4773 BWK. Summary Judgment for defendant**

**\*Michael W. Blake, et al. v. LOGS, U.S.D.C., E.D. Pa. No. 02-cv-4774 BWK. Summary judgment for defendant.**

**Stanley Brody, et al. v. Bank of America, N.A., U.S.D.C., E.D. Pa., No. 08-cv-5656 JF, Open and pending case.**

**Anthony Costante, et al. v. Chase Manhattan Mortgage Corp., New Jersey, Law Division, Middlesex County, Docket No. 005160-02. Dismissed.**

**Thomas W. Doyle , et al. v.  Mellon Bank, et al., CCP, Philadelphia County, April Term, 2002, No. 02715. Settled on an individual basis.**

**Freedom Medical Supplies, Inc., et al. v. AAA Mid Atlantic Insurance Company, et al., CCP, Philadelphia County, May Term 2003, No. 03305. Class Certified. Settled on a class basis.**

**Freedom Medical Supplies, Inc., et al. v. Nationwide Insurance Company, et al. CCP, Philadelphia County, May Term 2003, No.  03296. Class Certified. Settled on a class basis.**

**Gary B. Hall, et al. v. Midland Group and Midfirst Bank, et al., U.S.D.C., E.D. Pa. 99-cv-3108 JW. Class certified. Settled on a class basis.**

**Michael D. Heiland, et al. v. Dovenmuehle Mortgage, Inc., U.S.D.C., E.D. Pa., No. 99-cv-2960. Settled on an individual basis.**

**Paul Henthorn, et al. v. GMAC Mortgage Corporation, U.S.B.C., E.D. Pa. Adversary No. 02-2284, Case No., 00-21216. Dismissed.**

Jeremiah Boney, et al. v. Cenlar, FSB, U.S.D.C., E.D. Pa. 03-cv-2258 MM.  Class certified.  Settled on a class basis.

Heyward Simpkins, et al. v. Cenlar, FSB, U.S.D.C., E.D. Pa. 02-cv-4770 MM.  Class certified.  Settled on a class basis.

Robert Clark, et al. v. EMC Mortgage Corporation, CCP, Bucks County, No. 03-01810.  Class Certified.  Settled on a class basis.

Larry Dawson, et al. v. Dovenmuehle Mortgage, Inc., U.S.D.C., E.D. Pa. No. 00-cv-6171 JG.  Settled on an individual basis.

Maurice Dorsey, et al. v. EMC Mortgage Corporation, U.S.D.C., E.D. Pa., No. 07-cv-3903 ER.  Settled on an individual basis.

Maureen Dougherty, et al. v. Wells Fargo Bank, N.A.,  U.S.D.C., E.D. Pa. , No. 04-cv-4820.  Settled on an individual basis.

Dragos, et al. v. Chase Home Finance, LLC, U.S.D.C., E.D. Pa., 11-cv-04378 HB, FDCPA.  Settled on an individual basis.

Equable Ascent Finance, LLC v. Craggs, et al., U.S.D.C., E.D. Pa., 11-cv-04057 MSG.  FDCPA, Settled on an individual basis.

Louise I. Fitts, et al. v. Chase Manhattan Mortgage, New Jersey Superior Court , Law Division, Middlesex County, Docket No. MID-L-3066-04.  Summary judgment for defendant.  Appeal denied.

Franklin, et al. v. Grimes, et al.  U.S.D.C., E.D. Pa. 11-cv-07060 MSG.  FDCPA.  Filed November 14, 2011.

Charles Fratz, et al. v. Capital One Bank, et, al, U.S.D.C., E.D. Pa. 11-cv-02577 MSG.  FDCPA.  Active.

David H. Hart, et al. v. Homecomings Financial, LLC, et al., U.S.D.C., E.D. Pa., No. 07-cv-4177.  Settled on an individual basis.

Henner, et al. v. American Express, et al., U.S.D.C., E.D. Pa. 10-05765 MSG.  FDCPA.  Settled on an individual basis.

Marianne Joubert, et al. v. ABN AMRO Mortgage Group, et al., U.S.D.C., E.D. Pa. No. 03-cv-4290.  Summary judgment for defendant.  Appeal denied.

Marc Kahn, et al. v. Option One Mortgage Corporation, U.S.D.C., E.D. Pa. No.  05-cv-5628 MMB.  Dismissed.

William E. Kemp, et al. v. Stephen Doherty, Esquire, et al., U.S.D.C., E.D. Pa., No. 08-cv-1353 TJS.  Open, pending case.

Andrew S. Kondratick, Jr., et al.  v. Beneficial Consumer Discount Co., U.S.D.C., E.D. Pa. No. 04-cv-4895.  Settled on an individual basis.

Claudius Mitchell, et al. v. PNC Bancorp, et al., U.S.D.C., E. D Pa., 99-cv-3203 JG.  Settled on an individual basis.

George Naylor, et al. v. Washington Mutual Bank, et al., U.S.D.C., E.D. Pa. No. 01-cv-4642 BWK.  Summary judgment for defendant.

**Charles Norris, et al. v. Cenlar, FSB, U.S.D.C., E.D. Pa. No. 99-cv-1374 AB.  Settled on an individual basis.

**Charles Norris, et al. v. Firstrust Bank, U.S.D.C., E.D. Pa. No. 99-cv-1373 AB.  Settled on an individual basis.

Willard Nuel, et al. v. Chase Home Finance CO., U.S.D.C, E.D. Pa. 11-cv-02024 EL.  FDCPA.  Pending the Court's determination of a Rule 12(b)(6) Motion to Dismiss.

Kathleen Paone, et al. v. Wolpoff & Abramson, et al., U.S.D.C., E.D. Pa. 06-378 ER, FDCPA, Class Certification denied, Paone dismissed because of death, Walter settled on an individual basis; pending Court determination on attorney's fee to be awarded plaintiffs' counsel.

Irene Padilla, et al. c. GMAC Mortgage Corporation, U.S.D.C., E.D. Pa., 04-cv-2628 TJS.  Voluntarily Dismissed.

Irene Padilla, et al. v. GMAC Mortgage Corporation, U.S.B.C., E.D. Pa., 07-00156 (Case No. 98-18621 ELF).  Settled on an individual basis.

James T. Robinson, et al. v. Countrywide Home Loans, Inc., et al., U.S.D.C., E.D. Pa., No. 97-cv-2747 HB.  Class certified.  Settled on a class basis.

James Rohl, et al. v. Chase Home Finance, LLC, U.S.B.C., NJ, Case No. 00-54505 RTL, Adversary No. 05-02622.  Dismissed.

Phyllis Rosenthal, et al. v. Select Portfolio Servicing, Inc., U.S.D.C., E.D. Pa. No. 06-cv-4283.  Dismissed.

Shur, et al. v. Temple Inland Mortgage Corporation, U.S.D.C., E.D. Pa. 99-cv-4633 NS.  Inactive.

Sigma Supplies Corporation, et al. v. Progressive Halcyon Insurance Company, et al., CCP, Philadelphia County, August Term 2003, No. 02968.  Class certified.  Settled on a class

basis.

Harry Sponaugle, et al. v. First Union Mortgage Corp., U.S.D.C., E.D. Pa. , No. 01-cv-00042 JF. Summary judgment for defendant.

Robert Stella, et al. v. Homeq Servicing Corporation, CCP, Philadelphia County, March Term 2004, No. 03456. Dismissed.

Tomei, et al. v. PHH Mortgage Corporation, U.S.D.C., E.D. Pa. 10-06919 GP. Contract. Settled on an individual basis.

Christa Trimble Ryder, et al. v. Discover Bank, et al. , U.S.D.C. , E.D. Pa. 11-cv-01069 MSG. FDCPA. Motion to Compel Arbitration denied; awaiting defendant's answer to Complaint.

Rebecca Turner-Freely v. HSBC Finance Corporation, U.S.D.C., E.D. Pa., No. 05-cv-5381. Dismissed.

Douglas C. Walter, et al. v. Palisades Collection, LLC, et al., U.S.D.C., E.D. Pa., No. 06-378 ER. Open, pending case.

Dorothy Watson, et al., v. Portfolio Recovery Services, U.S.D.C., E.D. Pa. 10-03829 PBT. FDCPA. Settled on an individual basis.

Lyle J. White, et al. v. CSGA, LLC, et al., U.S.B.C., E.D. Pa. Adversary No. 06-00473, Case No., 04-35877. Settled on an individual basis.

Lyle J. White v. Phoenix Accounts Receivables, III, LLC, U.S.B.C., E.D Pa., Adversary No. 0472, Case No. 04-35877. Settled on an individual basis.

John Whomsley, et al. v. Homeq Servicing Corporation, U.S.B.C., E.D. Pa. , Case No. 98-34129, KJC, Adversary No. 03-00681. Dismissed without prejudice.

***Kenneth C. Young, et al. v. Toyota Motor Credit Corporation, et al., U.S.B.C., E.D. Pa. Adversary No. 03-00380, Case No. 98-35942. Dismissed.

***Kenneth C. Young, et al. v. NCO Financial Systems, et al., U.S.B.C., E.D. Pa. Adversary No. 03-00383, Case No. 98-35942. Dismissed.

Erich Zlupko, et al. v. Washington Mutual Bank, N.A., U.S.D.C., E.D. Pa., No. 02-cv-1179 BWK. Summary judgment for defendant.