# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES FRATZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>    Plaintiff,<br><br>vs.<br><br>CAPITAL ONE BANK (USA) N.A. AND GOLDMAN & WARSHAW, P.C.,<br><br>    Defendant. | Hon. Mitchell S. Goldberg<br><br>Civil Action No.: 11-CV-02577-MSG |

## **DEFENDANT GOLDMAN & WARSHAW, P.C.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

On the Brief:
Joann Needleman, Esq.
Donald S. Maurice, Esq.
   admitted *Pro Hac Vice.*
Maurice & Needleman, P.C.
Attorney for Defendant
Goldman & Warshaw, P.C.
935 One Penn Center
1617 JFK Blvd
Philadelphia, PA 19103
(215)789-7151
(215)563-8970 fax
dsm@mnlawpc.com
joann@mnlawpc.com

                            Dated: December 15, 2011

I.      **INTRODUCTION AND FACTS**

Plaintiff, Charles Fratz, brings this class action law suit against Defendant, Goldman & Warshaw, P.C., ("Goldman").[1] Plaintiff alleges that Goldman has violated the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, ("UTPCPL") 73 P.S. §201-1 *et seq.*, which also encompasses the Fair Credit Extension Uniformity Act, ("FCEUA") 73 P.S. 2270 *et seq*.

Plaintiff alleges Goldman files lawsuits on behalf of its client, Defendant, Capital One, Bank (USA) N.A. (hereinafter, "Capital One"), based on incorrect or false documents. To support this allegation, Plaintiff asserts that since his Capital One credit card application was initiated in 2002, Goldman's submission of 2005 Customer Agreement in support of an arbitration matter in Bucks County was false because the subsequent agreement could not have been applicable to the Plaintiff's account.

On November 27, 2008, Goldman filed a lawsuit in the Court of Common Pleas of Bucks County (hereinafter collectively referred as the "Bucks County Complaint" or "Bucks County Matter") against Plaintiff on behalf of Capital One seeking to collect the balance due of $6,813.20. While this matter was pending in Federal Court, on October 11, 2011, an arbitration was held pursuant to the Bucks County Matter. Plaintiff failed to appear but his counsel, Mr. Eisenberg did appear. The arbitration panel found in favor of Capital One and awarded $4,597.51. The arbitration award was reduced to judgment on November 21, 2011.

Plaintiff believes he should represent a class of persons who also were subject to lawsuits filed by Goldman on behalf of Capital One. Plaintiff points to fifty lawsuits filed by Goldman on

---

[1] Capital One Bank was also named in this lawsuit but settled in September of this year.

behalf of entities whose names are similar to Defendant, Capital One. Plaintiff does not tell us whether any of those lawsuits concerned a credit card agreement and, even if they did, whether the credit card agreement submitted by Goldman on behalf of Capital One, was subsequent to the origination date of the credit card identified in the lawsuit.

Plaintiff believes class certification is proper on the principal factual and legal issue --- whether he is liable under the 2005 Customer Agreement, despite there being a state court adjudication holding that he is, in fact, liable under that agreement.

This brief will demonstrate that the claims of the Plaintiff are not typical of the putative class members, Plaintiff and his counsel do not satisfy the adequacy test and that individualized defenses particular to Plaintiff's claim destroy predominance.

## II.   ARGUMENT

### A.   NATURE OF PLAINTIFF'S CLAIMS

#### 1.   *The FDCPA*

Congress enacted The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA") to eliminate abusive debt collection practices, to ensure that compliant debt collectors are not competitively disadvantaged and to promote "consistent state action" protecting consumers. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010).

Here, regardless of whether Goldman is a "debt collector" under the FDCPA, its filing of lawsuits on behalf of Defendant, Capital One, is not false, deceptive or abusive. That a judgment was entered against Plaintiff, who was represented by counsel in the courts of the Commonwealth of Pennsylvania, should be sufficient to establish that Goldman has acted properly.

### B. STANDARD ON CLASS CERTIFICATION

Class certification under Federal Rule of Civil Procedure 23 is within the discretion of the district court. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

To prevail on his motion, Plaintiff must satisfy all the requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b). *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001). Under Rule 23(a) the movant must demonstrate (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.*

Plaintiff moves for certification under Fed. R. Civ. P. 23(b)(3) (common questions of law and fact predominate) and is required to satisfy these prerequisites as well. *Behrend v. Comcast Corp.*, 655 F.3d 182, 189 (3d Cir. 2011). Rule 23(b)(3) requires (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking certification must satisfy his burden with respect to each requirement by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

The district court will perform "rigorous analysis" of the evidence and arguments presented for class certification. Id., at 318. This may also require the court to perform a preliminary inquiry into the merits of the suit if those arguments implicate Rule 23 requirements. Id., at 317-318.

Plaintiff has defined his class as:

> All persons who have been the subject of collection law suits brought by Defendants for which the Defendants attach as corroborative exhibits and/or as evidence written agreements represented by defendants as the written agreements governing the parties and serving

>as the written basis for the liability asserted against the alleged debtors/consumers, which attached exhibits and/or evidence are clearly and knowingly inapplicable, and do not represent any contractual relationship between the parties, and, furthermore, which agreements constitute intentional misrepresentation to the respective Courts and to the defendants named in the litigation.

*(Doc No.1 at ¶35, Plaintiff's Complaint)*

### C.   PLAINTIFF FAILS TO SATISFY ALL OF THE RULE 23(a) REQUIREMENTS

#### 1.   *Numerosity.*

Numerosity requires a demonstration that the class is so numerous that the joinder of individual plaintiffs is impracticable. Fed. R. Civ. P. 23(a) (1). "Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)." *Delgado v. McTighe*, 91 F.R.D. 76, 78 (E.D. Pa. 1981) "Speculation as to the number of parties, however, is not sufficient to satisfy the requirements of Rule 23(a) (1)." *Tuma v. American Can Co.,* 367 F. Supp. 1178, 1188 (D.N.J. 1973).

Plaintiff offers only speculation as to the number of putative class members. He points to Goldman having filed 50 lawsuits where "Capital One" is named as plaintiff. (*Doc. No 21-1 at pp. 2-3, Plaintiff's Brief In Support of Class Certification, "Plaintiff's Brief")* Those cases (which are attached to *Plaintiff's Brief as Exhibits A and B*), identify several plaintiffs, including, but not limited to "Capital One Bank USA NA," "Capital One FSB," and "Capital One Bank." Here, Plaintiff's Complaint, (Doc. No 1) identifies as a defendant, "Capital One Bank (USA), N.A." Plaintiff offers no evidence which suggests that any of the lawsuits identified in *Exhibits A and B* to his brief are the same entity as the Defendant here, Capital One Bank (USA), N.A.

Assuming the plaintiff in those 50 lawsuits is the same entity as Defendant, Capital One, here, we are asked to infer, because Plaintiff never asserts, that the 50 cases concern written agreements evidencing an extension of credit. Plaintiff's defines his class as including:

> [l]aw suits brought by Defendants for which the Defendants attach as corroborative exhibits and/or as evidence written agreements represented by defendants as the written agreements governing the parties and serving as the written basis for the liability asserted against the alleged debtors/consumers . . .

*(Doc No 1 at ¶36, Plaintiff's Complaint).* Although the putative class is limited to "lawsuits," in which Defendants have attached "exhibits and/or as evidence written agreements," Plaintiff provides no evidence that any of the 50 lawsuits included "exhibits and/or as evidence written agreements."

If we assume that these lawsuits do involve "exhibits and/or as evidence written agreements," Plaintiff provides no evidence that any of the lawsuits concern a credit card or other extension of credit.

If we give the Plaintiff the benefit of all inferences, and assume that all the lawsuits involve a credit card agreement or extension of credit, Plaintiff offers no evidence that the debt which is the subject of these lawsuits is within the FDCPA's definition of "debt." 15 U.S.C. § 1692(a)(5). "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" *Zimmerman v. HBO Affiliate Grp.,* 834 F.2d 1163, 1167 (3d Cir. 1987); *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1371 (11th Cir. 1998)( "By the plain terms of the statute, not all obligations to pay are considered 'debts' subject to the FDCPA." ). The FDCPA defines a "debt" as

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the

> subject of the transaction are primarily for personal family or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

Athough Plaintiff conducted no class discovery upon Capital One, prior to their dismissal from the case and no class discovery upon Goldman, he nevertheless had ample opportunity to review the public record of the 50 cases identified in his own moving papers. He did not do so and he therefore does not and cannot assert that any of the putative class members (1) had an agreement with defendant Capital One Bank (USA), N.A., (2) such persons were subject to lawsuits which have attached "exhibits and/or as evidence written agreements;" (3) that such agreements and/or the lawsuits involved an extension of credit; and (4) that the "debt" which was the subject of these lawsuits falls within the meaning of § 1692a(5).

Because Plaintiff only speculates there are putative members of the class, he has not satisfied the numerosity requirement.

### 2. *Commonality.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This is generally not an exacting standard, and if the plaintiff can show that there is a common nucleus of operative facts, the plaintiff will have met his burden as to commonality." *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) citing *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). So low is this standard that even where putative class members have not all suffered an actual injury, commonality can be satisfied by a demonstration that "all class members are subject to the same harm. . ." *Baby Neal for & by Kanter v. Casey,* 43 F.3d at 56.

Because Plaintiff has not identified any other lawsuit filed by Goldman on behalf of Capital One where "exhibits and/or as evidence written agreements" were attached, he has not

demonstrated a common question of law or fact. That Capital One or Goldman file lawsuits does not allow the inference that "exhibits and/or as evidence written agreements" were attached or that the agreements concerned a debt, that the lawsuits concern an extension of credit, or that the debt which is the subject of the lawsuits is within the meaning of § 1692a(5).

Supposing that there did exist other lawsuits filed by Capital One or Goldman where "exhibits and/or as evidence written agreements" were attached and that they are (at least) generally a debt within the meaning of the FDCPA, common questions of law or fact do not predominate. Plaintiff's entire claim is based upon the proposition that the agreements in each of these lawsuits is not the agreement between the Defendant, Capital One, and the class member. In order to establish this to be the case, it would be incumbent upon the Plaintiff to demonstrate that either no agreement existed between the class member and Capital One or that the agreement was different then that attached to the lawsuit. See, *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 95 F.R.D. 168, 178 (D. Del. 1982) (denying certification where liability is based on individual contract questions under as many as thirty-two different states' laws).

Second, and perhaps more important, as Goldman argues in its Cross-Motion for Summary Judgment *(Doc No. 31),* was the fact that a judgment was entered in a Pennsylvania court in favor of Defendant, Capital One, and against Plaintiff where the agreement was essential to the determination of the judgment. Federal courts "give state court judgments the same preclusive effect that the issuing state courts would have given them." *Montcrief v. Chase Manhattan Mortgage Corp.,* 275 Fed. App'x 149, 153 (3d Cir. 2008). The fact question Plaintiff presents –"whether the defendants knowingly utilized a clearly inappropriate and wrong Cardmember Agreement as the operative and governing contract between the members of the Class and its clients in collection law suits is false, deceptive and misleading" -  has been

determined, to Plaintiff's detriment. This determination is adverse to putative class members. Likewise, because membership in the class is predicated upon the filing of a lawsuit, a state court judgment in any of the putative class members' lawsuits could likewise have a similar preclusive effect upon them.

Plaintiff has not demonstrated that there are common questions of law or fact and, therefore, has not satisfied the commonality requirement.

### 3. *Typicality.*

"Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal for & by Kanter v. Casey*, 43 F.3d at 58. The focus of the typicality inquiry is upon the defendants' behavior and requires a demonstration that the class "arise from the same event or course of conduct and are based on the same legal theory." *Id.*

Plaintiff's claim is founded on one legal and factual theory; namely, Goldman's state court pleadings and/or evidence rely on credit agreements which are not the agreements between the class members and Defendant Capital One. (*Doc No. 1 at ¶¶8-1 , Plaintiff's Complaint*) Even if we disregard for the moment the preclusive effect of the state court judgment upon Plaintiff, proof of Plaintiff's claims would not necessarily prove the claims of the putative class members. Plaintiff asserts that because his credit card was originated in 2002, Goldman's use of a 2005 Capital One credit agreement "could not have been the operative Agreement." (*Doc No. 1, Plaintiff's Complaint*) This theory, to be typical, requires evidence that members of the putative class have credit card accounts with Defendant, Capital One, (which has not been demonstrated), and that the agreement Goldman submitted in its lawsuits were made subsequent to the

origination of the class members' accounts. This necessarily involves an individualized assessment which defeats class certification. See, *Forman v. Data Transfer,* 164 F.R.D. 400, 404 (E.D. Pa. 1995). Nonetheless, Plaintiff offers no proof to demonstrate that either fact is typical of the 50 lawsuits identified in his brief.

Plaintiff has failed to demonstrate typicality.

### 4. *Adequacy*.

Adequacy requires that the representative plaintiff is able to provide fair and adequate protection for the interests of the class. It also requires a demonstration that the class representative and counsel can provide adequate representation to the class, meaning that (1) plaintiff's counsel be qualified, experienced, and generally able to conduct the proposed litigation; and (2) plaintiff must not have interests antagonistic to those of the class. *New Directions Treatment Servs. v. City of Reading,* 490 F.3d 293, 313 (3d Cir. 2007).

#### a. <u>Plaintiff is Not An Adequate Representative</u>

A class representative must have at least minimal knowledge about his case so he can make informed decisions during the litigation. *Dotson v. Portfolio Recovery Assocs., LLC*, 2009 U.S. Dist. LEXIS 46903, **12-13 (E.D. Pa. June 3, 2009) citing *Allen v. Holiday Universal*, 249 F.R.D. 166, 184 (E.D. Pa. 2008) ("[C]ourts have denied certification where the representative appeared unaware of even the most material aspects of his case, not knowing why particular defendants are being sued, and having no conception of the class of persons that he purportedly represents."); *Rand v. Monsanto Corp.,* 926 F.2d 596, 599 (7th Cir. 1991) ("Although a representative plaintiff need not immerse [herself] in the case, the named plaintiff must have some commitment to the case, so that the 'representative' in a class action is not a fictive concept."); *Smyth v. Carter,* 168 F.R.D. 28, 33 (W.D. Va. 1996) (A class representative "must be

able, at a minimum, to make important nondelegable decisions about the course of the litigation . . . ."); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121 (N.D. Ill. 1990) ("A plaintiff whose knowledge is so wanting that [he] appears to be no more than a pawn of attorneys who seek a large fee award may be an inadequate class representative.").

Plaintiff testified he does not understand his role as a class representative:

> Q. Do you understand what it means to be a class representative?
> A. I'm representing the class.
> Q. Do you understand what those responsibilities are?
> A. I'm not fully aware of the responsibilities, no.

*(Plaintiff's Deposition, p. 71: 4-10 attached and marked as Exhibit A)*

> Q. Do you understand what a class action lawsuit is?
> A. No, I do not.

*(Plaintiff's Deposition, p. 9: 12-14, Exhibit A.*

Plaintiff has equally demonstrated a lack of commitment to his case. A principal defense to his claims is the res judicata effect of the state court judgment obtained by Defendant, Capital One, against him. (*Doc. No 31, Exhibit K, Defendant Goldman's Response and Cross-Motion for Summary Judgment)*. Plaintiff did not appear to defend in the state court action. As he testified:

> Q. Were you aware on October 11th, 2001 there was an arbitration in the Bucks County case?
> A. Yes.
> Q. And that you did not appear at that arbitration, did you?
> A. No.
> Q. Why not?
> A. I was working.
> Q. You could not take the day off?
> A. No. In my line of work I can request a day off, but it is a request, it is not something that is guaranteed. And I was not given the day off.
> Q. Had you made a request prior to the arbitration for the day off?
> A. No, I did not.

*(Plaintiff's Deposition, p. 63:18 – 64:l-13, Exhibit A)* Plaintiff's testimony reveals a lack of understanding of his responsibilities to the class, including his lack of commitment to the case.

### b.     Plaintiff's Counsel is Not Qualified

Plaintiff's counsel is not qualified substantially for the reasons identified by Judge Robreno in *Walter v. Palisades Collection, LLC*, 2010 U.S. Dist. LEXIS 7374 (E.D. Pa. Jan. 26, 2010). The Court found Plaintiff's counsel inadequate for two reasons; 1) the law firm is composed of two persons, who are father and daughter and are therefore who are less likely to work independent of one another; and, 2) with respect to Mr. Eisenberg:

> [I]t must be noted that he was disbarred upon consent between 1990 and 1998 because of issues involving the application of client funds. Prior unethical conduct is a relevant consideration pursuant to certification under Rule 23(a)(4). See *Hall v. Midland Group,* No. Civ. A. 99-3108, 2000 U.S. Dist. LEXIS 16751, 2000 WL 1725238, at *3 (E.D. Pa. Nov. 20, 2000); *Bogner v. Masari Inves.*, LLC, 257 F.R.D. 529, 533 (D. Ariz. 2009) (examining prior ethical complaints against proposed class counsel in a FDCPA class action). Additionally in 2000, Judge DuBois found that Mr. Eisenberg engaged in the unlicensed practice of law while working as a paralegal for Ms. McCullough during the period of his disbarment. *McCullough v. Chambers,* Nos. 98-6344, 96-16524, 2000 U.S. Dist. LEXIS 5277, 2000 WL 502827, at *6 (E.D. Pa. Apr. 25, 2000).

Id, at **30-31

Judge Robreno noted that Mr. Eisenberg had be certified as class counsel after his reinstatement to the bar in *Hall v. Midland Group*, 2000 U.S. Dist. LEXIS 16751, 2000 WL 1725238, at *3. n13; *Id*., at *31. However, he distinguished that class certification because it was granted in conjunction with a preliminary settlement and was not to be litigated on the merits as was the case in *Walter* and is the case here. *Id*.

However, since Mr. Eisenberg was certified as class counsel in *Hall*, Judge Robreno tells us that "he was sanctioned by Bankruptcy Judge Sigmund in two separate bankruptcy cases and ordered to take a course on attorney ethics. In addition, Mr. Eisenberg received a 'private remand' from the Disciplinary Board of the Supreme Court of Pennsylvania in 2005." *Id*., at 32.

In addition, while Ms. McCullough's professional conduct was not as difficult as Mr. Eisenberg's "her participation in Mr. Eisenberg's apparent unlicensed practice of law (as found by Judge DuBois) gives cause for concern. Furthermore, Ms. McCullough has disclosed that in 2006, Bankruptcy Judge FitzSimon ordered her to disgorge $ 500.00 of fees received from a client and to take a continuing legal education course." *Id*.

Although Judge Robreno did not rule out that either attorney could potentially serve as class counsel in future cases (and denied their certification as class counsel with a "heavy heart"), he observed that their lack of experience when coupled with these transgressions does not detract that "the Court is mindful that, by appointing counsel, it is requiring absentee class members, who did not engage Plaintiffs' counsel directly, to accept that Plaintiffs' counsel will faithfully, diligently, and skillfully represent these members' interests. Based on this record, the Court cannot do so." *Id*., at 35.

Here too there are similar concerns in the conduct of the litigation by Plaintiff's counsel. As demonstrated in Defendant's Cross-Motion for Summary Judgment, Goldman submitted the challenged Capital One agreement at the direction of its client, Defendant Capital One. *(Doc. No 31, Exhibit C at ¶16).* Yet, Plaintiff has, pre-class certification, settled his case with Defendant, Capital One, before obtaining any discovery as to the manner in which Capital One utilizes its customer agreements and what customer agreements are applicable to what customer. Plaintiff's counsel has also demonstrated inadequacy through their failure to obtain discovery concerning the number of putative class members and whether there are common issues of law and fact, as noted above.

### D.    PLAINTIFF CANNOT SATISFY RULE 23(b)(3) BECAUSE INDIVIDUAL ISSUES PREDOMINATE

The test for predominance involves a determination of whether the proposed class is sufficiently cohesive. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Fed. R. Civ. P. 23(b)(3) requires the Court to find that: 1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615.

The standard is considered "far more demanding" than the commonality requirement of Rule 23(a) because a "'common claim'" does not satisfy it; rather, "'issues common to the class must predominate over individual issues.'" *Amchem,* 521 U.S. at 624 (1997); *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008) (citation omitted).  The Court is asked to predict how "specific issues will play out" to determine whether common or individual facts predominate. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 522 F.3d 6, 20 (1st Cir. 2008). If, in order to make a prima facie case, "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)**.**

> **1.**    *Individual Issues Predominate as to 1) Whether Any of the Lawsuits Included the Submission of Account Agreements; 2) Whether the Submitted Account Agreements Post-date the Origination of the Credit Accounts; 3)   Whether State Court Judgments Have A Preclusive Effect; And, 4) Whether Any of These Lawsuits Involve "Debt" Within the Meaning of § 1692a(5).*

As outlined above, Plaintiff has not obtained any information concerning whether any of the 50 lawsuits he has identified where brought by Goldman on behalf of Defendant, Capital One; whether any of those lawsuits involved an extension of credit; whether an account

agreement was submitted in pleadings or as evidence by Goldman; whether any of the lawsuits allege the existence of an account agreement which post-dates the origination of the credit account; or, whether they involve § 1692a(5) "debt" – all of which form the basis of Plaintiff's claim.

Given that here Defendant, Capital One (through Defendant Goldman) has obtained a state court judgment against Plaintiff on the very account agreement he alleges does not bind him, that the Court will be required to explore other state court judgments entered in other lawsuits which may have a similar preclusive effect, may not involve an extension of credit, may not involve Defendant, Capital One and may not involve "debt" within the meaning of § 1692a(5), class certification must be denied because individual issues predominate.

### 2. *A Class is Not a Superior Method of Adjudication Because Individual Issues Predominate.*

When individual issues predominate, it often follows that a class is not a superior method of adjudication. *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 454 (E.D. Pa. 2000). Here, for the reasons set forth in this brief, a class is not a superior method of adjudication because individual issues predominate.

### III. CONCLUSION

Plaintiff has failed to satisfy all the prerequisites of Rule 23(a) and cannot demonstrate his proposed class can be certified under Rule 23(b)(3). Plaintiff's motion should be denied.

   Respectfully Submitted,

**MAURICE & NEEDLEMAN, P.C.**

/s/ *JOANN NEEDLEMAN*

_____

JOANN NEEDLEMAN (74276)

*/s/ DONALD S. MAURICE*

_____

DONALD S. MAURICE

935 One Penn Center
1617 John F. Kennedy Blvd
Philadelphia, PA 19103
(215) 789-7151
(215) 563-8970
joann@mnlawpc.com
Attorney for Defendant, *Goldman & Warshaw, P.C.*

Dated: December 15, 2011