**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES FRATZ, INDIVIDUALLY** | : | |
| **AND ON BEHALF OF ALL OTHERS** | : | |
| **SIMILARLY SITUATED,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GOLDMAN & WARSHAW, P.C.** | : | **NO.  11-cv-02577** |
| | : | |
| **Defendant.** | : | |
| | : | |

**Goldberg, J.**                                                     **October 16, 2012**

## MEMORANDUM OPINION

Plaintiff, Charles Fratz (hereinafter "Fratz"), has filed suit against a law firm, Defendant, Goldman & Warshaw, P.C., alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, et seq., Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. and the Fair Credit Extension Uniformity Act ("FCEUA"),[1] 73 P.S. § 2270.1, et seq.   Fratz alleges that Defendant knowingly relied upon a document that was "clearly not the applicable operative agreement" and used this document as evidence against him in a state court collection action.

Before the Court are both parties' cross-motions for summary judgment and Fratz's Motion for Class Certification.  For the reasons set forth below, Fratz's motions will be denied and Defendant's motion will be granted in part and denied in part.

---

[1] Fratz concedes that the FCEUA is inapplicable.  Accordingly, Defendant's Motion for summary judgment relating to Fratz's FCEUA claims is granted.

## I.    FACTUAL AND PROCEDURAL HISTORY

On November 27, 2008,  Defendant brought a state collection action in the Bucks County Court of Common Pleas against Fratz on behalf of Capital One Bank (USA) N.A. (hereinafter "Capital One") regarding an unpaid credit card balance of $6,813.20.   On March 29, 2011, Defendant provided Fratz's attorney with a notice of intention to praecipe the matter for arbitration, and also provided the documents Defendant intended to introduce as evidence during the arbitration hearing.  (Pl.'s Mot. Summ. J. 4.)   These documents included: (1) Fratz's signed credit card application dated 2002; (2) monthly billing statements from August 2005 through February 2008; and (3) an unsigned Cardmember Agreement copyrighted 2005.  (Def.'s Mot. Summ. J. 4.)  The 2005 Cardmember Agreement was provided only to Fratz's attorney and the arbitration panel.  Fratz himself did not see the 2005 Cardmember Agreement until his deposition in the matter currently before this Court.  (Pl.'s Dep. 45:14-17, Oct. 25, 2011.)

During the November 21, 2011 arbitration hearing, Fratz's attorney argued that the 2005 Cardmember Agreement was inapplicable and that its submission was a violation of the FDCPA. Nonetheless, the arbitrators allowed this agreement into evidence and entered a judgment against Fratz for $4,597.51.[2]  Fratz did not appeal the judgment and instead filed this federal action.  (Def.'s St. Facts ¶¶ 50-51.)

Fratz claims that the 2005 Cardmember Agreement presented to the arbitration panel cannot, without more, govern his 2002 account and that the use of this post-dated agreement is in violation

---

[2] It is undisputed that the 2005 Cardmember Agreement was accepted into evidence by the arbitration panel.  It is disputed, however, whether the panel accepted the 2005 Cardmember Agreement as the governing agreement.  (Compare Pl.'s Resp. to Def.'s Mot. Summ. J. 4 with Def.'s Reply in Supp. Mot. Summ. J. 2.)

of the FDCPA and Pennsylvania law.  (Pl.'s Mot. Summ. J. 1.)  In addition to his individual claims, Fratz alleges that Defendant is involved in a widespread scheme whereby Defendant, in pursuing collection law suits, attaches, as evidence, "clearly inapplicable and false exhibits . . . falsely representing that they are applicable contracts."  (Compl. ¶¶ 35 a-f.)

Defendant responds that the 2005 Cardmember Agreement is the proper governing agreement over Fratz's account and in support of this position has offered: (1) the declaration of Richard A. Napolitano, a legal recoveries manager at Capital One, affirming that the 2005 Cardmember Agreement is correct and applicable to Fratz; (2) references to "Regulation Z,"[3] which permits lenders such as Capital One to issue subsequent agreements for revolving credit lines after the original date of issuance; and (3) the Internal Memorandum from Capital One containing a rubric instructing Defendant to use the 2005 Cardmember Agreement as the governing agreement for Fratz and others similarly situated.  (Def.'s Mot. Summ. J. 11.)

Both Fratz and Defendant have filed motions for summary judgment.  Fratz has additionally filed a motion for class certification.  We address each motion in turn.

## II.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, "the pleadings, depositions, answers to

---

[3]  Regulation Z was "issued by the Board of Governors of the Federal Reserve System to implement the Truth in Lending Act," and it regulates the manner in which credit entities can change the terms and conditions of consumer agreements.  12 C.F.R. §§ 226.1 and 226.9(c)(2)(1)(A).  Regulation Z requires written notice be sent to consumers 45 days prior to any effective change. § 226.9(c)(2)(1)(A).  Defendant asserts that it complied with Regulation Z, and Fratz has failed to show otherwise.  (Def.'s Mot. Summ. J. 11-12.)

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To meet this standard, the party moving for summary judgment has the initial burden of supporting its motion with evidence in the record. Fed. R. Civ. P. 56(c).

If this requirement is satisfied, the burden shifts to the non-moving party to "set out specific facts showing a genuine dispute for trial." Fed. R. Civ. P. 56(e). The non-moving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims. Celotex, 477 U.S. at 331.

Where, as here, cross-motions for summary judgment have been filed, the summary judgment standard remains the same and each motion should be considered separately. Williams v. Philadelphia Housing Authority, 834 F. Supp. 794, 797 (E.D. Pa. 1993) aff'd 27 F.2d 560 (3d Cir. 1994).

## B.    Fratz's FDCPA Claims Under 15 U.S.C. § 1692e

The FDCPA was enacted by Congress in an effort to protect consumers from unfair debt collection practices. 15 U.S.C. § 1692(a). Under § 1692e of the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." At issue here are subsections 1692e(2)(A), 1692e(2)(B), and 1692e(10). These provisions prohibit false, deceptive or misleading representations: (1) of the character, amount or legal status of any debt; (2) of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt; and (3) during the

-4-

collection or attempted collection of any debt or information from the consumer, respectively.  Each of these provisions only apply to false, deceptive or misleading representations made to "consumers," which is defined  within the statute as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

In support of its motion for summary judgment, Defendant argues that because the allegedly false document was directed to Fratz's attorney, and not Fratz as the "consumer," the act does not apply, and thus summary judgment should be granted.  We disagree with this argument.

While the Third Circuit has not ruled directly on whether communications to an attorney give rise to a § 1692e violation, it has addressed the issue under § 1692f(1).[4]  See Allen ex Rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011) cert. denied, 132 S. Ct. 1141 (U.S. 2012).  In Allen, the Third Circuit held that communications directed to an attorney are actionable because "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer."  Id. (citing Evory v. RJM Acquisitions Funding LLC, 505 F.3d 769, 773 (7th Cir. 2007); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 232–33 (4th Cir. 2007)).  In reaching this conclusion, the court looked at the language of the statute and found that there is "nothing in the FDCPA that explicitly exempts communications to an attorney," and that doing so would undermine the deterrent effect of the FDCPA.  Allen, 629 F.3d at 368.  The Allen Court also noted that the FDCPA's  definition of "communication" is broadly defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium," which supports a finding that communications directed at a debtor's attorney are covered under § 1692f(1).

---

[4] Pursuant to § 1692f – Unfair Practices, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Id. (citing 15 U.S.C. § 1692a(2)).

While the holding in Allen pertains to § 1692f(1), its reasoning has been applied to another section of the FDCPA.  See Panto v. Prof'l Bureau of Collections, 2011 WL 843899 (D.N.J. Mar. 7, 2011).  In Panto, the district court  found that  the reasoning in Allen "applies with the same force to Plaintiff's claim under § 1692g(b),  because the definition of 'communication' found  in § 1692a(2) is applicable to both §§ 1692g(b) and 1692f(1)." Id. at *6.

We  agree  with  the  rationale  expressed  in  both  Allen  and  Panto  that  the  term "communication" should be applied broadly.  Thus, the expansive definition of "communication" is applicable to § 1692e and we conclude that communications directed at attorneys are actionable under § 1692e.

Having determined that § 1692e applies to the communication at issue, we must decide whether that communication was "false, deceptive or misleading" in violation of the FDCPA.  In making this determination, courts typically apply the "least sophisticated consumer" test.  See Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).  However, where communications are sent to attorneys, a "competent attorney" standard is applied when determining if the communication at issue was false, deceptive or misleading.[5]  Courts applying this standard have reasoned that the traditional "unsophisticated consumer" test is inappropriate when addressing communications sent to an attorney because "[m]ost lawyers who represent consumers in debt collection cases are familiar with debt collection law and therefore unlikely to be deceived." Evory, 505 F.3d at 774.  Nothing in Allen calls this standard into question.  In fact, Allen discussed the lower court's

---

[5] See e.g., Evory v. RJM Acquistions Funding LLC, 505 F.3d 769 (7th Cir. 2007); Wright v. Phelan, Hallinan & Schmieg, LLP, 2010 WL 786536 (E.D. Pa. Mar. 8, 2010); Marshall v. Portfolio Recovery Associates, Inc., 646 F. Supp. 2d 770 (E.D. Pa. 2009).

application of the "competent attorney" standard and expressed no disagreement with it. Accordingly, we also find that communications directed at a debtor's attorney will be actionable under § 1692e only if those communications would deceive or mislead a "competent attorney."

In applying the "competent attorney" standard to this case, we conclude that Fratz's claim fails and summary judgment for Defendant is appropriate.  Even assuming that the 2005 Cardmember Agreement is inapplicable, Fratz has not argued, much less shown, that a competent attorney would be deceived by it.  In fact, Fratz's own attorney was not deceived by it, and argued at the collection arbitration that the 2005 Cardmember Agreement did not govern Fratz's account, thus reflecting an understanding of its content.  The Evory decision, cited previously, supports this conclusion.

In Evory, the Seventh Circuit noted some circumstances where false representations in communications with a consumer's attorney would be considered to be materially misleading and thus be actionable under the act:

> A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.  505 F.3d at 775.

This type of false representation, one which would not be easily discovered by an attorney, is not present in this case.  As Fratz has not provided any evidence that a competent attorney would be deceived by the allegedly false document, and because Fratz's own attorney was in fact not deceived, there is no genuine dispute as to any material fact regarding Fratz's § 1692e claims, and

judgment must be granted for Defendant as a matter of law.[6]

C.   **Fratz's FDCPA Claims Under 15 U.S.C. § 1692f(1)**

Fratz also alleges a violation of § 1692f(1) of the FDCPA.  In order to successfully bring a claim under § 1692f(1), Fratz must show that Defendant collected, or attempted to collect an amount, including charges incidental to the principal obligation, that was not expressly authorized by contract or law.  15 U.S.C. § 1692f(1).  See F.T.C. v. Check Investors, Inc., 502 F.3d 159, 166 (3d Cir. 2007) ("The prohibition on unfair or unconscionable practices precludes a debt collector from adding any charge to the underlying debt unless that charge is authorized by law or the agreement creating the debt.").  In the Third Circuit, these claims are directly actionable and "[t]he only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law."  Allen, 629 F.3d at 688 (3d Cir. 2011).[7]

Here, Fratz does not dispute that he actually owed a debt to Capital One, but rather challenges the amount of interest and fees charged under the allegedly inapplicable 2005 Cardmember Agreement.  The gist of Fratz's § 1692f(1) claim is that Defendant used false

---

[6] The arbitration panel was also presented with the 2005 Cardmember Agreement. Defendant argues that this does not give rise to a § 1692e violation as a matter of law. We agree. While not addressed by this Circuit, when courts have addressed the issue of communications directed at an impartial decision maker, such as an arbitrator, they have found that the Act does not apply.  See O'Rourke v. Palisades Acquistion XVI LLC, 635 F.3d 938, 944 (7th Cir. 2011) cert. denied, 132 S. Ct. 1141 (U.S. 2012) (finding that false documents submitted to a judge are not covered by the FDCPA).

[7] Defendant also argues that summary judgment must be granted because a claim brought under § 1692f is deficient if it does not identify any misconduct beyond that which Fratz already asserted in other provisions of the FDCPA. (Def.'s Mot. Summ. J. 12.) However, in the cases cited by Defendant, the plaintiffs were not, as here, alleging a violation under a specific subsection but rather generally asserting a violation under § 1692f.  As Fratz brought his claim specifically under § 1692f(1), this argument is unpersuasive.

documentation to collect these unauthorized amounts that it was not authorized to collect.   (Def. Resp. Summ. J. 5; Pl.'s Dep. 61:16-21.)  Defendant responds that it is not liable under the FDCPA because the 2005 Cardmember Agreement was in fact the correct agreement and as such, it is entitled to judgment as a matter of law.  (See § 1692f(1) "the collection of any amount . . . unless such amount is expressly *authorized by the agreement* creating the debt . . . ."  (emphasis added)).

As noted previously, in an effort to prove the applicability of the agreement, Defendant relies on three pieces of evidence: (1) the declaration of Richard A. Napolitano stating that the 2005 Cardmember Agreement was the correct agreement; (2) references to "Regulation Z" and; (3) the Internal Memorandum from Capital One which indicates that accounts opened prior to July 1, 2008 and charged off after April 1, 2005 are governed by the 2005 Cardmember Agreement.  However, none of this information dispels the genuine dispute as to whether the 2005 Cardmember Agreement is applicable to Fratz's account.

As a preliminary matter, the Napolitano declaration, at least as it relates to the 2002 Cardmember Agreement, is inadmissible under Federal Rule of Civil Procedure 56(c)(1)(A).  Under this Rule, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A). "Materials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record."  Fed. R. Civ. P. 56 advisory committee's note 2010. See also, In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liab. Litig., 2009 WL 3444767, at *2 (E.D. Pa. Oct. 23, 2009) (granting summary judgment for defendants when the plaintiffs' only evidence consisted of an affidavit from a doctor who reviewed and

commented on patient records but failed to attach the records themselves).[8]  Although the 2002 Cardmember Agreement was referred to in the Napolitano declaration, the Agreement has not been placed in the record.  Therefore, under Rule 56(c)(1)(A), reference to the 2002 Agreement in Napolitano's declaration cannot be considered.

Next we consider "Regulation Z," and the Internal Memorandum from Capital One, neither of which establish the applicability of the 2005 Cardmember Agreement to Fratz's 2002 account. "Regulation Z," which permits credit card companies to change the terms and conditions which govern their agreements with consumers, only proves that Capital One had the *ability* to change their agreement with Fratz.  It does not constitute evidence that it actually did.  Similarly, the Internal Memorandum only shows that Defendant was abiding by the practices established by Capital One, not that those practices were actually correct or lawful.[9]  While a reasonable jury could infer from the Internal Memorandum that Capital One's policies were correct and thus that the 2005 Cardmember Agreement did in fact govern Fratz's account, this is insufficient to warrant summary judgment in Defendant's favor.

We also agree with Fratz's argument that genuine disputes of material fact remain that make

---

[8]Although we recognize that the holding in In re Diet Drugs was based on Federal Rule of Civil Procedure 56(e), which has since been amended, the requirement to support statements in affidavits with admissible evidence on the record remains.  See Fed. R. Civ. P. 56 advisory committee's note 2010 ("The requirement [formerly found in Rule 56(e)(1)] that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.").

[9] Defendants additionally advance a res judicata argument, alleging that "there has been a judicial determination that monies are owed by the Plaintiff based on the 2005 consumer agreement." (Def.'s Reply Mot. Sum. J. 7.) We disagree.  As mentioned above, it is not clear whether the arbitration panel actually used the 2005 Cardmember Agreement as the governing agreement or merely admitted it into evidence.

summary judgment inappropriate.  Fratz correctly notes that all credit card accounts are governed

by the Cardmember Agreement that was issued with the credit card, which in this case, was in 2002.

Therefore, it remains disputed as to whether the unsigned Cardmember Agreement dated 2005,

which does not itself read as an amendment or modification, governs a credit card issued in 2002.

(Pl.'s Mot. Sum. J. 10.)  Thus, "[a] reasonable jury could question why defendants failed to produce

the actual credit card agreement and account records and could infer from their non-production that

no such documents ever existed."  Gigli v. Palisades Collection, L.L.C., 2008 WL 3853295, at *8

(M.D. Pa. Aug. 14, 2008) (denying summary judgment when there was inconsistent testimony

regarding how the interest rate was determined and the defendant refused to produce the original

agreement).   Accordingly, we find that there is still a genuine dispute of a material fact as to the

applicability of the 2005 Cardmember Agreement.  Therefore, Defendant's motion for summary

judgment as to Fratz's 1692(f)(1) claim is denied.[10]

### D.    Fratz's State Law Claim

In  addition  to  his  FDCPA  claims,  Fratz  alleges  that  Defendant's  conduct  violated

Pennsylvania's  Unfair  Trade  Practices  Act  and  Consumer  Protection  Law  (UTPCPL).    The

UTPCPL "protects consumers of goods and services from unfair or deceptive trade practices or

acts." Gardner v. State Farm Fire & Casualty Co., 544 F.3d 553, 564 (3d Cir. 2008).  "The UTPCPL

lists twenty specifically prohibited practices in § 201-2(4)(i)-(xx), and also contains a catch-all

provision  in § 201-2(4)(xxi) which prohibits '[e]ngaging in any other fraudulent or deceptive

conduct  which  creates  a  likelihood  of  confusion  or  of  misunderstanding.'"    Garczynski  v.

---

[10] While sufficient to defeat Defendant's motion for summary judgment, we do not agree
that Fratz's arguments are sufficient to grant summary judgment.  For the same reasons
Defendant's motion is denied, Fratz's motion is also denied.

Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 509 (E.D. Pa. 2009) (quoting Hunt v. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008)).

In support of their motion for summary judgment, Defendant contends that because it is a law firm, the UTPCPL does not apply as a matter of law.  (Def.'s Mot. Sum. J. 19.)  We disagree.

While actions alleging attorney misconduct will not be viable under the UTPCPL, claims like Fratz's that allege improper debt collection practices by those who happen to be attorneys are covered.  Compare Yelin v. Swartz, 790 F. Supp. 2d 331, 337-38 (E.D. Pa. 2011) (denying defendant's motion to dismiss where "[p]laintiff seeks only to challenge [d]efendants' debt-collection practices, not the adequacy of [defendants'] legal representation), and Daniels v. Baritz, 2003 WL 21027238, at *5 (E.D. Pa. Apr. 30, 2003) (finding that unfair or deceptive practices allegedly committed by defendants during debt collection efforts are acts within the scope of the UTPCPL), with Jackson v. Ferrera, 2002 WL 32348328, at *2 (E.D. Pa. Apr. 16, 2002) (finding that the UTPCPL does not apply to professional malpractice actions), and Beyers v. Richmond, 937 A.2d 1082, 1088 (Pa. 2007) (plurality opinion) (finding that an attorney's mishandling of their own client's settlement proceeds is not governed by the UTPCPL, but rather by the state court's exclusive regulatory powers).  Here, because Fratz is challenging Defendant's debt-collection practices and not the adequacy of Defendant's legal representation, the UTPCPL is applicable to Defendant and as such Defendant's motion for summary judgment on Fratz's UTPCPL claim is denied.[11]

---

[11] Fratz also moves for summary judgment on his UTPCPL claim.  "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).  Because genuine disputes of material fact remain as to whether use of the 2005 Cardmember Agreement

**III.**   **FRATZ'S MOTION FOR CLASS CERTIFICATION**

"[T]o certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." Jackson v. Se. Pa. Transp. Auth., 260 F.R.D. 168, 181 (E.D. Pa. 2009) (citing In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008)).  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." Id.  Thus the plaintiff must at the time of certification provide some evidence that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

If these requirements are satisfied, the court must then find that the class action is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b).  Fratz has failed to meet his burden with respect to numerosity and commonality.

To establish numerosity, Fratz's proposed class must be so numerous that joinder of all its members is impracticable.  Fed. R. Civ. P. 23(a)(1).  While a plaintiff does not need to know the exact number of potential class members, "[m]ere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)." Delgado v. McTighe, 91 F.R.D. 76, 79 (E.D. Pa. 1981) (denying class certification when the plaintiff provided the number of minorities who failed the bar examination, but did not eliminate those outside of the class when seeking certification); see also Gillis v. Hoechst Celanese Corp., 1992 WL 68333, at *5 (E.D. Pa. Apr. 1,

---

during the state collection case was improper, Fratz is not entitled to summary judgment.

1992) (denying class certification where plaintiff identified only other employees who *could* have been affected by the retirement policy and not specifically other employees who actually *were* affected by the policy).  In short, to meet the requirement of Rule 23(a)(1), Fratz must provide some evidence beyond speculation as to how many members will fall into his specific class.

> Fratz's class is defined as:
>
> All persons who have been, or continue to be, the subject of attempts to collect a credit card debt by Defendant, from and including April 14, 2010, for which the Defendant uses as corroborative exhibits and/or as evidence written agreements represented by defendant as the written agreements governing the parties' relationship and serving as the written basis therefor and for the liability asserted against the alleged debtors/consumers, which attached exhibits and/or evidence are clearly and knowingly inapplicable, and do not represent any contractual relationship between the parties' as post-dating the date of the credit card issuance.  (Pl. Mem. in Supp. of Class Certification 26.)

As evidence that his class is sufficiently numerous, Fratz identifies court dockets from at least 50 other lawsuits where the current defendant, Goldman & Warshaw, is representing Capital One as the named plaintiff.[12]  No other evidence of numerosity is cited.

The mere fact that Defendant is representing Capital One in other collection actions cannot give rise to the inference that those cases also involve an attempted collection of a credit card debt wherein Defendant has attempted to use as evidence a post-dated Cardmember Agreement that did not govern the relationship between Capital One and the debtor.  Fratz has neither alleged nor shown that any of those lawsuits involve facts similar to the current case.  Therefore, not only does Fratz provide only speculation as to the number of class members, it is also unclear whether those

---

[12] Of those 50 cases, the named plaintiffs were identified as "Capital One Bank USA NA," "Capital One FSB" and "Capital One Bank."  Fratz offers no evidence which suggests that any of those named plaintiffs are in fact the same entity as here, "Capital One Bank (USA), N.A."

other law suits contain common questions of fact or law.  Accordingly, class certification must be denied.

**IV.**    **<u>CONCLUSION</u>**

For the foregoing reasons, Fratz's Motion for Summary Judgment and Motion for Class Certification are denied and Defendant's Motion for Summary Judgment is granted in part and denied in part, consistent with this Opinion.  Our Order follows.